**ALEX SHESHUNOFF MANAGEMENT SERVICES, L.P., Petitioner,**

v.

**Kenneth JOHNSON and Strunk & Associates, L.P., Respondents.**

No. 03–1050.

Supreme Court of Texas.

Argued Nov. 10, 2004.

Decided Oct. 20, 2006.

John J. McKetta III, J. Preston Randall and Eric G. Behrens, Graves, Dougherty, Hearon & Moody, P.C., Austin, for Petitioner.

Daniel H. Byrne, Cynthia W. Veidt, Bruce Perkins, Fritz, Byrne, Head & Harrison, LLP, Austin, Mary S. Dietz, Marcy H. Greer and John M. Mings, Filbright & Jaworski L.L.P., Houston, for Respondent.

Bruce C. Morris, Beirne, Maynard & Parsons LLP, Houston, M. Scott McDonald, Littler Mendelson, P.C., Dallas, for Amicus Curiae.

Justice WILLETT delivered the opinion of the Court, in which Justice HECHT, Justice BRISTER, Justice GREEN, and Justice JOHNSON joined.

In this case we revisit the Court's 1994 decision in *Light v. Centel Cellular Co.*[1] and again consider the enforceability of covenants not to compete in the context of at-will employment. The question today is whether an at-will employee who signs a non-compete covenant is bound by that agreement if, at the time the agreement is made, the employer has no corresponding enforceable obligation. Under *Light,* the answer to that question was always "no." Today we modify our holding in *Light* and hold that an at-will employee's non-compete covenant becomes enforceable when the employer performs the promises it made in exchange for the covenant. In so holding, we disagree with language in *Light* stating that the Covenants Not to Compete Act[2] requires the agreement containing the covenant to be enforceable the instant the agreement is made.

## I. Background

Petitioner Alex Sheshunoff Management Services, L.P. (ASM) provides consulting services to banks and other financial institutions. Respondent Kenneth Johnson began working for ASM in 1993 as an at-will employee. In September, 1997, ASM promoted Johnson to director of its "Affiliation Program," a program designed to maintain relationships with clients and prospective clients. A few months after the promotion, ASM presented Johnson with an employment agreement (Agreement) containing a covenant not to compete. ASM informed Johnson that signing the agreement was a condition of continued employment. Johnson signed the Agreement in January 1998.

The Agreement was at-will in the sense that it had no fixed term of employment and stated that "[e]ither party may elect to terminate this Agreement at any time for any reason," subject to employer and employee notice provisions. The employer notice provision stated that ASM would give notice of termination to Johnson (unless the termination stemmed from employee misconduct) but then stated that ASM could immediately terminate Johnson so long as ASM paid a specified fee to Johnson.[3]

The Agreement also stated:

---

1. 883 S.W.2d 642 (Tex.1994).

2. TEX. BUS. & COM.CODE §§ 15.50–15.52.

3. The Agreement provided:

To assist Employee in the performance of his/her duties, Employer agrees to provide to Employee, special training regarding Employer's business methods and access to certain confidential and proprietary information and materials belonging to Employer, its affiliates, and to third parties, including but not limited to, customers and prospects of the Employer who have furnished such information and materials to Employer under obligations of confidentiality.

The Agreement then specified information that qualified as confidential information, and provided that the employee agreed to keep all such information strictly confidential.

The Agreement included a covenant not to compete, providing that for one year after his termination, Johnson would not provide consulting services to any ASM clients to whom Johnson had "provided fee based services in excess of 40 hours within the last year of employment," and would not "solicit or aid any other party in soliciting any affiliation member or previously identified prospective client or affiliation member."

The parties dispute whether the nature of the training and confidential information Johnson received after he signed the Agreement was different from the information and training he had previously received. However, there is no dispute that after the Agreement was signed Johnson received confidential information. ASM also paid for training from third parties that was provided to Johnson after he signed the Agreement. ASM was under no preexisting contractual obligation to provide such information and training.

In 2001, Johnson participated in confidential meetings regarding ASM's plans to introduce a bank overdraft protection product. He requested and received an internal manual on this new product. The market leader for such products was Respondent Strunk & Associates, L.P. (Strunk). In early 2002, Strunk contacted Johnson about hiring him. ASM offered evidence that, after Strunk contacted Johnson, he continued to receive confidential information from ASM regarding its plans to offer the new overdraft product. In March 2002, Johnson told ASM that he was leaving to work for Strunk.

ASM sued Johnson, alleging breach of the covenant not to compete and seeking injunctive relief and damages. Strunk intervened. The court granted a temporary injunction. Strunk and Johnson then moved for summary judgment, arguing that the covenant was unenforceable as a matter of law. They argued that under footnote six of *Light*, 883 S.W.2d at 645 n. 6 (discussed below), ASM's promises to provide confidential information and specialized training were illusory at the time the agreement was made and the covenant was therefore unenforceable. The district court granted the summary judgment motions. The court denied Strunk's request for attorney fees, however, and entered a final judgment.

The court of appeals affirmed. 124 S.W.3d 678. It held that under footnote six of *Light*, the covenant was unenforceable because the promises to provide specialized training and confidential informa-

Employer agrees that if it terminates this Agreement for any reason other than misconduct on the part of Employee (in which case no notice or pay in lieu thereof is required), it will give Employee at least two (2) weeks' advance notice of such termination, plus one (1) additional week of notice per year of service up to eight (8) years of service. If Employer fails to give Employee such notice, Employer will pay Employee an amount equivalent to the same number of weeks' salary, less applicable deductions and withholdings.

tion were illusory when the agreement was made and therefore did not comport with the Act's requirement that the agreement be enforceable when it was made:

> At the heart of the parties' dispute is whether ASM's promise to provide special training and access to confidential information was illusory. Under section 15.50, the relevant inquiry is whether ASM's promise was binding at the time that the agreement was made.... ASM's promise to give Johnson access to training and confidential information in the future was illusory because ASM could have fired Johnson immediately after he signed the agreement and escaped its obligation to perform.... Thus, ASM's acceptance of Johnson's promise to maintain confidentiality by later providing confidential information created a unilateral contract but not an otherwise enforceable agreement at the time the agreement was made. *See Light*, 883 S.W.2d at 645 n. 6.

124 S.W.3d at 685, 687.

## II. Discussion

The Covenants Not to Compete Act (Act) states:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com.Code § 15.50(a).

### A. "At the Time the Agreement Is Made"

#### 1. *Light's* Analysis

In *Light*, we analyzed the requirements for enforceability of a covenant not to com-

pete under section 15.50. In that case, an employee (Light) who had held her job since 1985 signed an agreement in 1987 containing a covenant not to compete. 883 S.W.2d at 643. The agreement stated that the employer "agrees to provide the [employee] initial and on-going specialized training necessary to sell the mobile radio communications services [employer] offers." *Id.* at 646 n. 8. It provided that "employment is terminable at the will of either [employee] or [employer]." *Id.* at 645–46 n. 8.

We held that "otherwise enforceable" agreements under section 15.50(a) "can emanate from at-will employment so long as the consideration for any promise is not illusory." *Id.* at 645. We concluded that the agreement contained, in addition to the covenant not to compete, three non-illusory promises: (1) the employer's promise to provide initial specialized training; (2) the employee's promise to provide fourteen days' notice prior to termination; and (3) the employee's promise to provide an inventory upon termination. *Id.* at 645–46. We construed the employer obligation to provide initial training as not depending on whether the employee was still employed: "Even if Light had resigned or been fired after this agreement was executed, United would still have been required to provide the initial training." *Id.* at 646.

We held that these promises were not sufficient to make the covenant enforceable under the Act. We held that section 15.50 requires the covenant to be "ancillary to or part of" the otherwise enforceable agreement, and that to meet this requirement, two conditions must be met: "(1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from

competing; and (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement." *Id.* at 647. We concluded that the non-illusory promises in the agreement did not satisfy these requirements because the covenant not to compete was not designed to enforce the employee's promises to give notice and provide an inventory. *Id.* at 647 & n. 15. We recognized that the agreement must give rise to an "interest worthy of protection" by a covenant not to compete, *id.* at 647 (quoting *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex.1990)), and that "business goodwill and confidential or proprietary information are examples of such worthy interests," *id.* We stated that the employer's promise to train the employee "might involve confidential or proprietary information," *id.*, and that a reciprocal promise by the employee not to disclose such confidential information would meet the requirement that the covenant be designed to enforce the employee's consideration provided in the agreement, *id.* at 647 & n. 14. However, the covenant in *Light* failed because "Light did not promise in the otherwise enforceable agreement to not disclose any of the confidential or proprietary information given to her by" her employer. *Id.* at 647–48.

▪ We do not disturb the holding in *Light.* The covenant in that case was part of an agreement that contained mutual non-illusory promises and was an "otherwise enforceable agreement." *Id.* at 646. The covenant was not enforceable, however, because it was "not designed to enforce any of Light's return promises in the otherwise enforceable agreement." *Id.* at 647. Unlike Johnson in the pending case, Light made no promise not to disclose confidential information. Under *Light,* for a covenant to be "ancillary to or part of"

an enforceable agreement under section 15.50, "(1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement." *Id.* at 647.

▪ In the pending case, ASM promised to disclose confidential information and to provide specialized training under the Agreement, and Johnson promised not to disclose confidential information. The covenant was ancillary to or part of the agreement under the two requirements of *Light* quoted immediately above. However, under other language in *Light,* the Agreement was not enforceable at the time it was made.

In footnote six of *Light,* we discussed section 15.50's requirement that the covenant be "ancillary or part of an otherwise enforceable agreement *at the time the agreement is made:* "

> If only one promise is illusory, a unilateral contract can still be formed; the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance. For example, suppose an employee promises not to disclose an employer's trade secrets and other proprietary information, if the employer gives the employee such specialized training and information during the employee's employment. If the employee merely sought a promise to perform from the employer, such a promise would be illusory because the employer could fire the employee and escape the obligation to perform. If, however, the employer accepts the employee's offer by performing, in other words by providing the training, a unilateral contract is created

in which the employee is now bound by the employee's promise. The fact that the employer was not bound to perform because he could have fired the employee is irrelevant; if he has performed, he has accepted the employee's offer and created a binding unilateral contract.... Such a unilateral contract existed between Light and United as to Light's compensation. But such unilateral contract, since it could be accepted only by future performance, could not support a covenant not to compete inasmuch as it was not an "otherwise enforceable agreement at the time the agreement is made" as required by § 15.50.

*Id.* at 645 n. 6 (citations omitted).

 In the pending case, the court of appeals correctly held that under *Light's* footnote six, the agreement was illusory insofar as it required ASM to provide confidential information and specialized training. Since ASM could fire Johnson after the agreement was signed, and before it provided any confidential information or specialized training, we have exactly the situation hypothesized in footnote six. Unlike the agreement in *Light,* the agreement in the pending case did not oblige ASM to provide initial training whether or not Johnson was still employed by ASM. The agreement made no such promise, but instead stated that ASM agreed to provide training and access to confidential information "[t]o assist Employee in the performance of his/her duties." There was no promise to provide such training and access after the employee had been terminated. ASM argues that the contract was not illusory and was not an at-will contract at all because of the notice provisions in Agreement. Under the notice provision applicable to the employer, ASM could terminate Johnson immediately and without notice so long as it paid a specified sum to Johnson. The promises to provide confidential information and training to Johnson were therefore illusory at the time the agreement was executed. Under *Light,* "the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing," *id.* at 647, and if this particular consideration is never provided by the employer, the covenant not to compete cannot be enforced. Absent such consideration, the covenant is not "ancillary to or part of the otherwise enforceable agreement" under the Act as interpreted by *Light.* To hold otherwise would mean that an employer could enforce a covenant merely by promising to pay a sum of money to the employee in the agreement, a result inconsistent with *Light's* requirements that the covenant must give rise to the employer's interest in restraining the employee from competing and the covenant must be designed to enforce the employee's consideration or return promise. A covenant not to compete is not designed to enforce a notice provision. *Id.* at 647 n. 15. The court of appeals correctly held that under *Light,* "ASM's non-illusory promise to give at least two weeks' notice before terminating Johnson does not give rise to its interest in restraining Johnson from competing." 124 S.W.3d at 688.

## 2. Today's Departure From *Light*

 We agree with *Light's* recitation of basic contract law in footnote six that "[i]f only one promise is illusory, a unilateral contract can still be formed; the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance." Upon further review of the Act and its history, however, we disagree with footnote six insofar as it precludes a unilateral contract made enforceable by performance from

ever complying with the Act because it was not enforceable at the time it was made.

At the outset, this language in *Light* was not essential to the holding in that case. *Light* held that the agreement in issue was not a unilateral contract but was an enforceable bilateral contract when made because, as the court construed the employer's promise to provide training in that case, the employer had made a promise to provide *initial* training that was enforceable when made. "Even if Light had resigned or been fired after this agreement was executed, United would still have been required to provide the initial training." *Light*, 883 S.W.2d at 646. As explained above, the fatal defect in the agreement in *Light* was not that it was unenforceable when made, but that there was no "ancillary" promise by the employee, such as a promise not to disclose confidential information, that the covenant not to compete was designed to enforce.

■ Revisiting the issue of what the clause "at the time the agreement is made" in the Act means, we conclude that we must disagree with *Light's* view that a unilateral contract can never meet the requirements of the Act because such a contract is not immediately enforceable when made. Section 15.50 states that "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made...." Simply reading the text, the clause "at the time the agreement is made" can modify either "otherwise enforceable agreement" or "ancillary to or part of." No amount of pure textual analysis can tell us unequivocally which preceding clause is modified. *Light* stated that the agreement must be enforceable at the time the agreement is made, and therefore concluded that "at the time the agreement is made" must modify "otherwise enforceable agreement." We now

conclude, contrary to *Light*, that the covenant need only be "ancillary to or part of" the agreement at the time the agreement is made. Accordingly, a unilateral contract formed when the employer performs a promise that was illusory when made can satisfy the requirements of the Act.

■ There is no sound reason why a unilateral contract made enforceable by performance should fail under the Act. We understand why the Legislature and the courts would not allow an employer to spring a non-compete covenant on an existing employee and enforce such a covenant absent new consideration from the employer. "[A]n agreement not to compete, like any other contract, must be supported by consideration." *DeSantis*, 793 S.W.2d at 681 n. 6. The Act, as we now read it, addresses this concern. The covenant cannot be a stand-alone promise from the employee lacking any new consideration from the employer. *See, e.g., Martin v. Credit Prot. Ass'n, Inc.*, 793 S.W.2d 667, 669 (Tex.1990) (holding employment agreement consisting entirely of a covenant not to compete unenforceable because the covenant "must be supported by valuable consideration"). But if, as in the pending case, the employer's consideration is provided by performance and becomes non-illusory at that point, and the agreement in issue is otherwise enforceable under the Act, we see no reason to hold that the covenant fails.

### 3. The Act's Legislative History

■ Given the indefiniteness of the phrase "at the time the agreement is made," we have also examined the legislative history of the Covenants Not to Compete Act. Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on. This enacted language is what constitutes the law, and when a statute's

words are unambiguous and yield a single inescapable interpretation, the judge's inquiry is at an end. *See McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003). Wherever possible, we construe statutes as written, but where enacted language is nebulous, we may cautiously consult legislative history to help divine legislative intent.[4] *See Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001). In the present case, because the modifying clause "at the time the agreement is made" is imprecise and suggests two conflicting interpretations on the central issue before us, we consult the legislative history to help glean the statute's fair and ordinary meaning. Nothing in the Act's legislative history suggests a reading contrary to the one we adopt today. Indeed, the legislative materials suggest that the current wording of the Act was intended to cover covenants not to compete executed in the course of at-will employment of exactly the sort at issue in the pending case.

The Act originated in 1989 with Senate Bill 946. As originally filed, the bill provided:

> Notwithstanding Section 15.05 of this code, a covenant not to compete is enforceable to the extent that it:
>
> (1) is ancillary to an otherwise enforceable agreement; and
>
> (2) contains reasonable limitations as to time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. S.B. 946, 71st Leg., R.S. (1989) (original version of bill).

Before passage, an amendment was offered and adopted which added language to subsection (1), so that as passed this subsection stated: "(1) is ancillary to an otherwise enforceable agreement but, if the covenant not to compete is executed on a date other than the date on which the underlying agreement is executed, such covenant must be supported by independent valuable consideration." Act of May 23, 1989, 71st Leg., R. S., ch. 1193, § 1, 1989 Tex. Gen. Laws 4852.

The original and amended language of the 1989 legislation do not suggest that the Legislature intended to exclude unilateral contracts that become enforceable when, as occurred in this case, the employer proceeds to perform his promises to convey confidential information and provide training. The amendment by its terms was intended to cover the situation where the covenant is signed after the original employment agreement but is nonetheless enforceable if supported by new consideration.

The Act was passed to expand the enforceability of covenants not to compete. We explained in *Light* that the Act was a response to decisions from this Court. *Light,* 883 S.W.2d at 643. A Senate bill analysis noted:

> Recent Texas Supreme Court Cases, (notably *Hill v. Mobile Auto Trim, Inc.,* 725 S.W.2d 168 (Tex.1987), and *DeSantis v. Wackenhut Corp.,* 31 Tex. Sup.Ct. J. 616 (July 13, 1988)[,*on rehearing,* 793 S.W.2d 670 (Tex.1990) ] ) however, have severely restricted the enforceability of these covenants in franchise and employment settings and raised questions

---

4. We say "cautiously" because while the Code Construction Act expressly authorizes courts to use a range of construction aids, including legislative history, TEX. GOV'T CODE § 311.023, we are mindful that over-reliance on second-

ary materials should be avoided, particularly where a statute's language is clear. If the text is unambiguous, we must take the Legislature at its word and not rummage around in legislative minutiae.

about their use in other previously acceptable circumstances.

SEN. RESEARCH COMM., BILL ANALYSIS, TEX. S.B. 946, 71st Leg., R.S. (1989). A House bill analysis stated that *Hill* "overturned long-standing precedent," and that the bill "would simply restore over 30 years of common law developed by Texas Courts and remove an impairment to economic development in the state." HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. S.B. 946, 71st Leg., R.S. (1989). *See also Peat Marwick Main & Co. v. Haass,* 818 S.W.2d 381, 388 (Tex.1991) (noting that "the purpose of the Act was to return Texas' law generally to the common-law as it existed prior to *Hill* ").

The Act was amended in 1993 in response to more court decisions. The legislative history indicates that the primary purposes of the amendment were to make clear that covenants not to compete were applicable to at-will employment situations and that the statute prevailed over contrary common law. A House bill analysis stated:

> Texas courts have not consistently followed the requirements of Chapter 15. One case has implied that the common law on the subject remains applicable. Another case invalidated covenants not to compete in connection with "at will" employment contracts. . . . C.S.H.B. 7 clarifies the applicability of Chapter 15 and ensures that "at will" employment contracts are covered.[5] The bill further

makes clear that the statutory requirements prevail over the common law.

HOUSE COMM. ON BUS. & INDUS., BILL ANALYSIS, Tex. H.B. 7, 73d Leg., C.S. (1993). To that end, section 15.51(b) of the Act was amended to make specific reference to at-will contracts,[6] and section 15.52 was added to provide that the Act preempts common law. TEX. BUS. & COM.CODE §§ 15.51(b), 15.52.

The 1993 amendment also rewrote section 15.50 of the Act, the critical provision for our purposes. Prior to the 1993 amendment, section 15.50 provided:

> Notwithstanding Section 15.05 of this code, a covenant not to compete is enforceable to the extent that it:
>
> (1) is ancillary to an otherwise enforceable agreement but, if the covenant not to compete is executed on a date other than the date on which the underlying agreement is executed, such covenant must be supported by independent valuable consideration; and
>
> (2) contains reasonable limitations as to time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Act of May 23, 1989, 71st Leg., R.S., ch. 1193, § 1, 1989 Tex. Gen. Laws 4852. The 1993 amendment to this provision was originally introduced in a bill that provided:

---

5. The at-will employment case the 1993 amendment sought to overrule was surely *Travel Masters, Inc. v. Star Tours, Inc.,* 827 S.W.2d 830 (1991), which held that "a covenant not to compete executed either at the inception of or during the employment-at-will relationship cannot be ancillary to an otherwise enforceable agreement and is unenforceable as a matter of law." *Id.* at 833.

6. Section 15.51(b) now provides in part: "If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, *for a term or at will,* the promisee has the burden of establishing that the covenant meets the criteria specified by Section 15.50 of this code." (Emphasis added). The clause "for a term or at will" was added by the 1993 amendment.

(a) Notwithstanding Section 15.05 of this code, a covenant not to compete is enforceable to the extent that it:

(1) is ancillary to an otherwise valid transaction or relationship but, if the covenant not to compete is executed on a date other than the date on which the transaction occurs or the relationship begins, such covenant must be supported by independent valuable consideration; and

(2) contains reasonable limitations as to time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. H.B. 7, 73d Leg., R.S. (1993) (original version of bill). A substituted bill was submitted that became law and provided:

(a) Notwithstanding Section 15.05 of this code, a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Act of May 29, 1993, 73d Leg., ch. 965, § 1, 1993 Tex. Gen. Laws 4201. For the first time, the clause "at the time the agreement is made" appears in the statute.

The reason that the language of section 15.50 was changed in 1993 from "otherwise enforceable agreement" to "otherwise valid transaction or relationship" and then back to "otherwise enforceable agreement" is unclear, but apparently the new reference to "at the time the agreement is made" simply retained the notion that a covenant not to compete could be signed after the employment relationship began so long as the covenant is supported by new consideration in an enforceable contract. The House bill analysis states that the change "describes applicability of the Act in terms of a covenant which is part of an otherwise 'enforceable agreement' instead of a 'valid transaction or relationship.' The substitute deletes the need for independent consideration."

Cumulatively, this legislative history indicates that (1) in 1989 and 1993 the Legislature wanted to expand the enforceability of covenants not to compete beyond that which the courts had allowed, (2) in 1989 the Legislature specifically wanted to ensure that covenants could be signed after the employment relationship began so long as the agreement containing the covenant was supported by new consideration, and (3) in 1993 the Legislature specifically wanted to make clear that covenants not to compete in the at-will employment context were enforceable. As to this last purpose, the 1993 amendment likely deleted the reference in section 15.50 to "the date on which the underlying agreement is executed" because such a reference might suggest that at-will arrangements are not covered by the statute, as there is no underlying or original executed employment agreement when the employment is at will.

As best we can tell, the language in the current version of the Act making reference to the agreement "at the time the agreement is made" was included in the 1993 amendment to maintain the rule, recognized in the 1989 version of the Act, that a covenant could be signed after the date that employment began so long as the new agreement was supported by independent consideration. This language was not intended to impose a new requirement that the agreement containing the covenant must be enforceable the instant it is made. There is no indication in the legislative history of the 1993 amendment of an intent

to reduce the enforceability of covenants not to compete; all of the legislative history is to the contrary.

Moreover, the legislative history of the 1993 amendment indicates that one of its purposes was to make clear that at-will employment relationships can be the subject of a covenant not to compete. In this context, we think the typical arrangement would be similar to the covenant in the pending case. The employee had an at-will arrangement, and he signed a covenant not to compete as part of an agreement in which the employer promised to provide confidential information and specialized training and the employee promised not to reveal confidential information. In this typical arrangement, the employer's promise is prospective and becomes enforceable only after the employer provides such confidential information or training and a unilateral contract results. If "at the time the agreement is made" in section 15.50 means that the agreement must be enforceable the instant it is made, as *Light's* footnote six requires, then most covenants not to compete executed by employees with at-will employment will be unenforceable. Only the peculiar agreement, such as the one at issue in *Light* itself,[7] where the employer promises to provide confidential information or training even if the employee has been fired or has quit, would be covered by the Act. Such a reading would take language from the 1993 amendment, intended to *expand* the reach of the Act to cover at-will employment, and use that language to *restrict* the reach of the Act in this context.

### 4. The Act Applies to Unilateral Contracts

For these reasons, we hold that a covenant not to compete is not unenforceable under the Covenants Not to Compete Act solely because the employer's promise is executory when made. If the agreement becomes enforceable after the agreement is made because the employer performs his promise under the agreement and a unilateral contract is formed, the covenant is enforceable if all other requirements under the Act are met. In the pending case, these other requirements were met and, by the time Johnson left ASM, the agreement had become an enforceable unilateral contract because ASM had provided confidential information and specialized training as promised to Johnson, and Johnson had promised in return to preserve the confidences of his employer.

We also take this opportunity to observe that section 15.50(a) does not ground the enforceability of a covenant not to compete on the overly technical disputes that our opinion in *Light* seems to have engendered over whether a covenant is ancillary to an otherwise enforceable agreement. Rather, the statute's core inquiry is whether the covenant "contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com.Code § 15.50(a). Concerns that have driven disputes over whether a covenant is ancillary to an otherwise enforceable agreement—such as the amount of information an employee has received, its importance, its true degree of confidentiality, and the time period over which it is received—are better addressed in determining whether and to what extent a restraint on competition

---

7. As explained above, the employer in *Light* was required to provide "initial … specialized training" whether or not the employee "had resigned or been fired after this agreement was executed." *Light*, 883 S.W.2d at 646.

is justified.[8] We did not intend in *Light* to divert attention from the central focus of section 15.50(a). To the extent our opinion caused such a diversion, we correct it today.

## B. Reasonableness of the Covenant

 Johnson and Strunk also contended in their motions for summary judgment, as they do here, that the covenant not to compete was unreasonable. The court of appeals did not reach this issue. The covenant in the parties' employment agreement provided in pertinent part:

(a) In consideration of the training and access to Confidential Information provided by Employer, and so as to enforce Employee's agreement regarding such Confidential Information ..., Employee agrees that while employed by Employer, and for a period of one (1) year following the termination of Employee's employment for any reason, Employee will not

(i) directly or indirectly, as an owner, employee, independent contractor or otherwise, provide consulting services to banks, savings and loans or other financial institutions where the Employee has provided fee based services in excess of 40 hours within the last year of employment, or with which Employee has conducted significant sales activity, including, but not limited to, more than one sales call,

preparation of a sales proposal and actual sales, within the last year of employment. This restriction applies regardless of geographic location, it being acknowledged by the parties that Employer's clients are not confined to a particular geographic area;

(ii) solicit or aid any other party in soliciting any affiliation member or previously identified prospective client or affiliation member; or

(iii) solicit or aid any other party in soliciting for employment any then-current employee of Employer.

(b) Employee understands and acknowledges that Employer has made substantial investments to develop its business interests and goodwill, and to provide special training to Employee for the performance of Employee's duties under this Agreement. Employee agrees that the limitations as to time, geographical area, and scope of activity to be restrained contained in this Paragraph 6 are reasonable and are not greater than necessary to protect the goodwill or other business interests of Employer. Employee further agrees that such investments are worthy of protection, and that Employer's need for the protection afforded by this Paragraph 6 is greater than any hardship Employee might experience by complying with its terms.

---

8. In this regard, Chief Justice Jefferson's concurrence is concerned that an employer might try to pull a fast one by withholding confidential information up until the employee announces his intent to leave, and then quickly sharing the secret information to prevent the employee from working for a competitor. 209 S.W.3d at 662. Today's decision should not stoke such worries or embolden such "one-sided gamesmanship," 209 S.W.3d at 662, as the concurrence terms it. While it seems unlikely that a rational company would rush to disclose valuable trade secrets as a departing employee walks out the door, in such a case the court could, under the Act and the facts, deem such a last-minute gambit "unreasonable" and unnecessary to protect the employer's business interests under section 15.50(a). Further, it is axiomatic that injunctive relief is an equitable remedy, subject to equitable principles, *see, e.g., In re Gamble*, 71 S.W.3d 313, 317 (Tex.2002), and the court could easily conclude that the employer's unclean hands in such circumstances renders it ineligible for injunctive relief.

Johnson argues that the covenant is overbroad because:

- its restriction on his solicitation of certain of ASM's prospective clients and "affiliation members" is unrelated to any training or confidential information ASM provided Johnson after he signed the employment agreement;
- ASM's protection of its goodwill is unrelated to any such information;
- there is no basis for restricting Johnson from calling on ASM's clients of whom he was aware before signing the employment agreement.

We disagree. With Johnson's help, as Director of Affiliation, ASM continued to develop clients for four years after the employment agreement was signed. Johnson helped develop ASM's goodwill and could have tried to capitalize on it unfairly after going to Strunk. Johnson was even privy to ASM's development of a product to compete with Strunk. Although ASM had given Johnson access to the same marketing information without a covenant not to compete, nothing precluded ASM from seeking the greater protection of a covenant when it did. The summary judgment record shows that Johnson's covenant would have precluded him from calling on 821 ASM clients for one year. When Johnson began work with Strunk, he agreed he would not sell an overdraft protection product, not just to Strunk's customers, but to anyone in the industry, and not for one year, but for two years after leaving Strunk's employment. Johnson testified that his covenant with Strunk was reasonable, just as he admitted in his employment agreement that his covenant with ASM was reasonable.

We conclude that Johnson's covenant with ASM was reasonable under section 15.50(a). Johnson and Strunk were therefore not entitled to summary judgment on their contrary argument. Since the covenant was enforceable, Johnson and Strunk were not entitled to recover attorney fees. ASM did not move for summary judgment on the enforceability of Johnson's covenant; thus, the case must be remanded to the trial court. Obviously, the one-year period during which Johnson's activities were to be restricted has passed, and ASM is no longer entitled to the injunctive relief it sought, and for a while obtained, at the outset. But ASM's claim for damages for breach of the covenant remains pending.

## III. Conclusion

We reverse the judgment of the court of appeals that ASM take nothing against Johnson and Strunk, affirm its judgment that Strunk not recover attorney fees against ASM, and remand the case to the trial court for further proceedings.

Chief Justice JEFFERSON filed a concurring opinion, in which Justice O'NEILL and Justice MEDINA joined.

Justice WAINWRIGHT filed a concurring opinion.

Chief Justice JEFFERSON, joined by Justice O'NEILL and Justice MEDINA, concurring.

The Court's holding permits an employer to enforce a non-compete covenant months or even years after the employee signed it, as long as the employer eventually fulfills its side of the bargain. That sort of delay is inconsistent with clear statutory language that the covenant must be enforceable "at the time the agreement is made." While I agree with the Court that "at the time" does not require an instantaneous exchange of consideration, neither does the statute permit the employer's promise to hang in the air, indefinitely, until it "becomes enforceable" by performance. Rather, consistent with *Light* and with the statute, I would hold

that the employer's exchange of consideration must occur within a reasonable time after the agreement is made. Because that condition was satisfied on this record, I concur in the judgment.

## I

### The Covenants Not to Compete Act

At common law, courts used four criteria to evaluate the reasonableness of a covenant not to compete. *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168, 170–71 (Tex. 1987). The covenant had to be (a) necessary to protect a legitimate business interest of the promisee, (b) supported by consideration, (c) reasonable as to its time, territory, and activity limitations, and (d) not injurious to the public. *Id.* In *Hill,* we adopted the additional restriction that "covenants not to compete which are primarily designed to limit competition or restrain the right to engage in a common calling are not enforceable." *Id.* at 172 (citations and quotations omitted). Our "common calling" rule proved difficult to define and apply. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682–83 (Tex. 1990) (discussing cases). In 1989, the Legislature enacted the Covenants Not to Compete Act, which essentially codified the four criteria applied at common law. *See* Act of June 16, 1989, 71st Leg., R. S., ch. 1193, § 1, 1989 Tex. Gen. Laws 4852, 4852; *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex.1991) (noting that "the purpose of the Act was to return Texas' law generally to the common-law as it existed prior to *Hill"*). As amended, the Act states that a covenant is enforceable if it is

> ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do

not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com.Code § 15.50(a).

The central issue in this case concerns the meaning and application of "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made." *Id.* Consistent with our interpretation in *Light,* it is helpful to view this text as incorporating the first two criteria from the common law. First, the covenant must protect a legitimate business interest that originates in the enforceable agreement. Second, the covenant must be supported by the consideration in the enforceable agreement.

## A

### The "Ancillary" Relationship

Because a covenant not to compete is a restraint of trade, at common law the covenant was unenforceable as against public policy unless it arose from a "valid transaction or relationship," such as "the purchase and sale of a business, and employment relationships." *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644 n. 4 (Tex.1994) (citing *DeSantis,* 793 S.W.2d at 681–82). The transaction or relationship had to create a legitimate interest worthy of protection, such as "business goodwill, trade secrets, and other confidential or proprietary information." *DeSantis,* 793 S.W.2d at 682. Thus, for example, an agreement between two strangers in which a covenant not to compete was supported merely by a payment of money was unenforceable. *See, e.g.,* Restatement (Second) of Contracts § 187 cmt. b.

Following the common law, section 15.50(a) does not permit the covenant to stand alone. Hence, the covenant must be "ancillary to or part of" an enforceable

agreement. TEX. BUS. & COM.CODE § 15.50(a). In *Light*, we dissected the ancillary relationship with a two-part test.[1] The relationship is satisfied if the covenant arises within or alongside an agreement to transfer and safeguard a legitimate business interest. A confidentiality agreement is a model because its purpose is to provide the employee with confidential information in return for his promise not to disclose it.[2] If the covenant is ancillary to such an agreement, it is not a direct restraint of trade in violation of public policy because it protects a legitimate business interest. The agreement must, however, be supported by consideration.

## B

## Consideration

A promise not to compete, by itself, is not a contract. Like any other promise, it must be supported by consideration to be enforceable.[3] Consideration for a promise may be either a performance or a return promise bargained for in a present exchange. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex.1991); RESTATEMENT (SECOND) OF CONTRACTS § 71(1) (1981). Each party's promise or performance serves as a reciprocal inducement to enter the agreement. *Roark*, 813 S.W.2d at 496; OLIVER WENDELL HOLMES, JR., THE COMMON LAW 293–94 (Little, Brown & Co. 1881); *cf. Connell v. Provident Life & Accident Ins. Co.*, 148 Tex. 311, 224

S.W.2d 194, 196 (1949) (discussing "the elemental principle of contract law that 'nothing is a consideration that is not regarded as such by both parties' ") (quoting *Fire Ins. Ass'n v. Wickham*, 141 U.S. 564, 579, 12 S.Ct. 84, 35 L.Ed. 860 (1891)); RESTATEMENT (SECOND) OF CONTRACTS § 71(2) (a performance or return promise is bargained for if it is "sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise"). It follows that "past consideration" is not consideration. *See Light*, 883 S.W.2d at 645 n. 6; *Roark*, 813 S.W.2d at 496.

So that the covenant complies with these principles and is enforceable as a matter of contract law, section 15.50(a) requires the covenant to be supported by consideration in the "otherwise enforceable agreement." The common law was familiar with this system of supplying consideration to the covenant:

> An enforceable covenant not to compete must be ancillary to an otherwise valid contract whose primary purpose is unrelated to the suppression of competition between the parties. A covenant not to compete must be supported by valuable consideration. However, as long as there is an exchange of consideration to support the primary purpose of the agreement, the covenant not to compete is supported by that consideration.

1. We stated that (1) the consideration given by the employer in the enforceable agreement must give rise to its interest in restraining the employee from competing, and (2) the covenant must be designed to enforce the consideration given by the employee in the enforceable agreement. *Light*, 883 S.W.2d at 647.

2. As we explained in *Light*, the provision of confidential information gives rise to the employer's interest in restraining the employee from competing, and a covenant not to compete is designed to enforce the employee's

promise not to disclose the information. *Light*, 883 S.W.2d at 647 n. 14.

3. There are, of course, traditional exceptions to this general rule. *See, e.g., 1464–Eight, Ltd. v. Joppich*, 154 S.W.3d 101, 109–10 (Tex. 2004) (failure to pay recited nominal consideration does not preclude enforcement of option contract); RESTATEMENT (SECOND) OF CONTRACTS §§ 82–94 (1981) (discussing promissory estoppel, promises to pay debts discharged in bankruptcy, and other examples).

*Martin v. Credit Prot. Ass'n, Inc.*, 793 S.W.2d 667, 669 (Tex.1990) (citations omitted); *see also Justin Belt Co. v. Yost*, 502 S.W.2d 681, 683–84 (Tex.1973). Thus, if the "otherwise enforceable agreement" is a confidentiality agreement, the promise (or performance) to provide confidential information must serve as consideration for the promise not to compete.[4] Because "past consideration" is not consideration, the statute requires the covenant to be "ancillary to or part of an otherwise enforceable agreement *at the time the agreement is made* . . . ." Tex. Bus. & Com.Code § 15.50(a) (emphasis added). Accordingly, the covenant and the enforceable agreement must be formed together as part of one transaction.

In sum, section 15.50(a) seeks to enforce reasonable covenants that protect legitimate business interests and are supported by valid consideration. These two criteria are interlaced because, for purposes of the statute, valid consideration is a promise (or performance) to transfer or share the legitimate business interest, be it trade secrets, specialized training, goodwill, or other confidential and proprietary information. A covenant satisfying the statute is part of a transaction that benefits both parties. In the employment setting, these benefits include, for example, more efficient operations through freedom of communication within an organization, and greater investment in the improvement of business methods and technologies. Harlan M. Blake, *Employee Agreements Not to Compete*, 73 Harv. L.Rev. 625, 627 (1960). In addition, the special knowledge

and skills acquired by the employee increase his value and compensation. *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168, 171 (Tex.1987); *see also* Jeffrey T. Rickman, *Noncompete Clauses in Georgia: An Economic Analysis*, 21 Ga. St. U.L.Rev. 1107, 1120–21 (2005). The covenant, in turn, ensures that the costs incurred to develop human capital are protected against competitors who, having not made such expenditures, might offer higher salaries to employees and thereby appropriate the employer's investment. Greg T. Lembrich, *Garden Leave: A Possible Solution to the Uncertain Enforceability of Restrictive Employment Covenants*, 102 Colum. L.Rev. 2291, 2296 (2002).

## C

### At–Will Employment

The covenant's dependency on the consideration in an "otherwise enforceable agreement" presents problems in the at-will employment context because any promise whose performance requires continued employment is illusory. *Light*, 883 S.W.2d at 645; *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003). Generally, a promise is illusory if it does not commit the promisor to perform. *See* Restatement (Second) of Contracts § 77 cmt. a; 3 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 7.7 (4th ed.1992). At-will employment renders many promises illusory because the promisor effectively "retains the option of discontinuing employment in

---

4. The employer's promise or performance in the "otherwise enforceable agreement" can furnish consideration for promises given by the employee in both the agreement and the covenant. *See Birdwell v. Birdwell*, 819 S.W.2d 223, 228 (Tex.App.-Fort Worth 1991, writ denied) ("A single consideration is sufficient to support multiple promises bargained for in an agreement."); *Mitchell v. Lawson,*

444 S.W.2d 192, 196 (Tex.Civ.App.-San Antonio 1969, no writ) (where two instruments are executed as part of the same transaction, the consideration given in one may support collateral promises made in the other); *see also* Restatement (Second) of Contracts § 80 cmt. a (a single performance or return promise may furnish consideration for multiple promises).

lieu of performance." *Light*, 883 S.W.2d at 645 & n. 5 (discussing the example of an employer's promise to raise wages). Because an illusory promise does not constitute consideration, an agreement based on an illusory promise is not an "otherwise enforceable agreement." *See id.*, 883 S.W.2d at 645 n. 6; RESTATEMENT (SECOND) OF CONTRACTS § 77 cmt. a; 3 WILLISTON ON CONTRACTS § 7.7.

I agree with the Court that an agreement based on an illusory promise may become enforceable as a unilateral contract when the promisor performs. *Light*, 883 S.W.2d at 645 n. 6 (explaining that the employee's promise is treated as an offer, which the employer accepts by performance, creating a binding unilateral contract); *United Concrete Pipe Corp. v. Spin–Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968) (assignee of pipeline construction contract performed terms of assignment agreement, rendering promissory note enforceable); 3 WILLISTON ON CONTRACTS § 7:15. Part performance is sufficient to render the entire agreement enforceable. *Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487, 489 (1943); *see also O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 244 (Tex.App.-San Antonio 1998, pet. denied); *Sunshine v. Manos*, 496 S.W.2d 195, 198 (Tex.Civ.App.-Tyler 1973, writ ref'd n.r.e.); RESTATEMENT (SECOND) OF CONTRACTS §§ 32, 50, 62. However, while a unilateral contract is an "otherwise enforceable agreement," the performance that creates it does not supply consideration to a covenant, nor satisfy section 15.50(a), unless the unilateral contract and the covenant are formed together as part of one transaction. *See* TEX. BUS. & COM.CODE § 15.50(a). For example, in a confidentiality agreement, the employer must provide the confidential information in exchange for the employee's promises not to disclose and not to compete. *Light*, 883 S.W.2d at 645 n. 6.

While this exchange need not be contemporaneous, it must occur within a reasonable time so that the employer's performance and the employee's promises are bargained for and constitute reciprocal inducements. *Cf. Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 504 (Tex.1998) (Gonzalez, J., concurring) ("When the parties omit an express stipulation as to time, it is in accord with human experience and accepted standards of law for us to assume they meant whatever term … might be reasonable in the light of the circumstances before them at the date of the contract.") (quoting *Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12, 16 (1957)); *Gulf Oil Corp. v. Reid*, 161 Tex. 51, 337 S.W.2d 267, 275 (1960) ("Where no time is fixed for performance of any phase of a contract, the law necessarily will imply that it is to be performed within a reasonable time. That which is implied in a written contract is as much a part of it as though it were expressed therein."); *see also* U.C.C. § 2–309(1) (2003); RESTATEMENT (SECOND) OF CONTRACTS § 231 cmt. b. If the employer's performance is not part of the same transaction, but instead comes months or years later, the resulting unilateral contract does not satisfy the statute because it was not an "otherwise enforceable agreement" when the parties formed the covenant. *Light*, 883 S.W.2d at 645 n. 6.; TEX. BUS. & COM.CODE § 15.50(a); *see, e.g., TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 38–39 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (holding covenant not to compete unenforceable because at-will marketing consultant received customer lists one year after signing employment agreement).

## II

### Response to the Court

Undeterred by a contrary pronouncement in *Light*, the Court holds that the

phrase "at the time the agreement is made" modifies not "otherwise enforceable agreement," which it directly precedes, but "ancillary to or part of." A plain reading of the statute, however, establishes that the phrase "at the time the agreement is made" either refers solely to "otherwise enforceable agreement" or to both "otherwise enforceable agreement" and "ancillary to or part of"—but in no event to "ancillary to or part of" alone. Under the Court's reasoning, however, an employer's illusory promise satisfies the Act's requirements as long as the employer opts to perform at some indefinite time in the future. There are two problems with this approach: First, it is contradicted by the Act's grammatical structure. *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580–81 (Tex.2000) (stating that, under the doctrine of last antecedent, "a qualifying phrase in a statute or the Constitution must be confined to the words and phrases immediately preceding it to which it may, without impairing the meaning of the sentence, be applied"). Second, and more importantly, it would permit an employer's illusory promise to bind its employee to the covenant even if, at the time the covenant is signed, the employer never intended to perform, and even when the employer's performance is deferred so long that one cannot say the enforceable agreement and covenant are part of the same transaction.

After today, an employer may easily refrain from sharing trade secrets or other specialized technical knowledge with an employee for a substantial period of time after the covenant is signed, only to quickly perform once the employee indicates an intention to leave his current job for the employer's competitor. *See Light*, 883 S.W.2d at 645 & n. 5 (discussing the example of an employer's promise to raise wages). Thus, an employer may now legitimately restrain trade merely by performing a previously illusory promise, thereby converting an unenforceable unilateral contract into a binding commitment at the last minute. We should not encourage such one-sided gamesmanship. If the employer's performance is not part of the same transaction but instead comes much later in time, the resulting unilateral contract does not satisfy the Act's requirements because it was not "an otherwise enforceable agreement" when the parties formed the covenant. TEX. BUS. & COM.CODE § 15.50(a); *Light*, 883 S.W.2d at 645 n. 6; *see, e.g., TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 38–39 (Tex.App.-Houston [1st Dist.] 2005, no pet.)(holding covenant not to compete unenforceable because at-will marketing consultant received customer lists one year after signing employment agreement). I would hold that "at the time" requires both that the employer's promise be tied to the covenant as part of the same transaction, and that the employer tender consideration within a reasonable time after the covenant is signed.

In a footnote, the Court says that only an irrational employer would trigger the covenant as a means of subverting an employee's subsequent mobility in the marketplace. 209 S.W.3d at 653. The Court underestimates the competitive nature of business. But the point is larger than that. Under the Court's interpretation, the employer need not even intend to perform its side of the bargain when it compels the employee to sign covenant. If the employer has no incentive to perform, these covenants—once viewed as impermissible restraints on trade—will become not only ubiquitous in at-will employment contracts, but enforceable at the employer's whim. Because the Court would not require the employer to prove an intent to fulfill its side of the bargain (an intent that would be implicit if the employer had to perform within a reasonable time), the em-

ployee is potentially left with none of the benefits typically conferred by an exchange of consideration. *See DeSantis* 793 S.W.2d at 682 (holding that covenant can permissibly accomplish a "salutary purpose" that encourages "an employer to share confidential, proprietary information with an employee in furtherance of their common purpose," but may not "take unfair advantage" of its employee, thereby impairing the "employee's personal freedom and economic mobility"). Moreover, the circumstances behind the covenant's formation are not, as the Court suggests, subject to equitable review. Nor should they be if, as the Court holds, the contract is enforceable as a covenant the moment it is signed. By statute a court in equity reviews not the covenant's formation, but its reasonableness in respect to time, geographical area, and scope of activity. TEX. BUS. & COM.CODE § 15.50(a).

## III

### Johnson's Covenant Not to Compete

In January 1998, the parties signed an employment agreement containing a confidentiality agreement and a covenant not to compete. In the confidentiality agreement, ASM promised "special training regarding [its] business methods and access to certain confidential and proprietary information" in exchange for Johnson's promise "to keep the Confidential Information, and all documentation, access and information relating thereto, strictly confidential." Johnson's covenant satisfies section 15.50(a)'s ancillary relationship requirement because it reinforces the parties' agreement to share and protect ASM's

confidential and proprietary information. *See Light,* 883 S.W.2d at 647 & n. 14.

Johnson's covenant also satisfies the statute's consideration requirement. In September 1997, four months before signing the employment agreement, Johnson was promoted to Director of ASM's Affiliation Program. In this position, ASM provided Johnson with daily access to confidential information about the company's finances, strategies, client lists, marketing assessments, product development, pricing, sales projections, and client feedback. Much of this information was made available on an electronic database, which continuously updated the information. When Johnson signed the covenant, and during the next four years, ASM provided such access on a daily basis.[5] Although ASM's promise to provide the access was initially illusory, ASM's contemporaneous performance created an enforceable unilateral contract. For example, Johnson became a member of ASM's senior management team, affording him the opportunity to interact directly with numerous chief executive officers and senior bank executives the moment he signed the agreement. ASM's performance thus supplied valid consideration for Johnson's covenant not to compete. *Light,* 883 S.W.2d at 645 n. 6; *United Concrete,* 430 S.W.2d at 364. Johnson's covenant was therefore ancillary to an otherwise enforceable agreement at the time the agreement was made, as section 15.50(a) requires.

## IV

### Conclusion

Based on the record in this case, I agree with the Court's judgment that Johnson's

---

**5.** Both Johnson and ASM's CEO, Gabrielle Sheshunoff, testified that he experienced "no change" in his access to confidential information as a result of signing the covenant. Johnson's briefs to this Court confirm that the covenant "resulted in absolutely no change in his job duties, responsibilities, or access to information—confidential or otherwise—within ASM."

employment agreement is enforceable. I disagree with the Court's analysis, however, and thus concur only in the judgment.

Justice WAINWRIGHT, concurring.

Today, the Court modifies its interpretation in *Light v. Centel Cellular Company* of the Covenants Not to Compete Act. *See* 883 S.W.2d 642 (Tex.1994); TEX. BUS. & COM.CODE §§ 15.50–.52. The at-will employee in this case, Kenneth Johnson, asserted that a noncompete agreement was unenforceable under *Light's* construction of subsection 15.50(a) of the Act because no consideration was exchanged at the time the parties entered into the agreement. Contrary to *Light,* the Court holds that Johnson became bound by his promise not to compete when his employer later performed its corresponding promise to provide special training in its business methods and confidential information. This is similar to a unilateral contract under the common law and seems to address the Legislature's purpose. I join most of the Court's opinion.

I disagree with the Court's decision not to reconsider *Light's* test for determining whether a covenant not to compete is "ancillary to or part of" an otherwise enforceable agreement. 883 S.W.2d at 647 n. 14. First, the Act does not create standards for these words beyond their common and ordinary meaning. *Light* does. In *Light,* the Court explained that "if an employer gives an employee confidential and proprietary information or trade secrets in exchange for the employee's promise not to disclose them, and the parties enter into a covenant not to compete, the covenant is ancillary to an otherwise enforceable agreement. . . ." *Id.* I agree with this statement. However, *Light* erected two additional requirements to enforce a noncompete. For a covenant not to compete to be "ancillary to or part of" the confi-

dentiality agreement, the consideration given by the employer for the confidentiality agreement "must give rise to the employer's interest in restraining the employee from competing," and the noncompete "must be designed to enforce the employee's consideration or return promise" not to disclose confidential information. *Id.* I would disapprove of these court-made requirements. Second, the statements in *Light* are dicta because Debbie Light, unlike Johnson in this case, did not promise to keep her employer's confidential information secret. Third, I fail to see compelling logic in requiring that the consideration for the otherwise enforceable agreement give rise to the employer's interest in restraining the employee from competing. An employer may desire a confidentiality agreement with its employees to protect the employer's confidential or proprietary property, an interest the Court has recognized as "worthy of protection." *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 682 (Tex.1990). Under traditional contract law, the consideration for a confidentiality agreement could be money, as other courts have recognized. *See, e.g., Zinpro Corp. v. Ridenour,* No. 07–96–0008–CV, 1996 WL 438850, at *9 (Tex.App.-Amarillo Aug.1, 1996, no writ) (not designated for publication) (suggesting that consideration for confidentiality agreement could be money, but evidence did not show payment). Under *Light's* footnote 14 and the Court's opinion, a covenant not to compete would not be "part of or ancillary to" a confidentiality agreement supported by monetary consideration. To determine the enforceability of the covenant, the focus should be on the purpose of the otherwise enforceable agreement rather than the consideration for it. Because the noncompete would supplement the confidentiality agreement, it would constitute the otherwise enforceable agreement to which the noncompete

is ancillary. I would disapprove of footnote 14 and use the ordinary meanings of the statutory language—ancillary means "supplementary" and part means "one of several ... units of which something is composed." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 84, 857 (9th ed.1990).

More broadly, I wonder why we require an employer to provide consideration, in addition to employment, to make a confidentiality agreement entered at the commencement of or during employment enforceable post-termination. Almost fifty years ago we held that recovery against an employee for misappropriation of confidential information is not dependent on contractually imposed duties, but the duty on an employee not to misappropriate trade secrets is created by the confidence placed in an employee by his employer. *Hyde Corp. v. Huffines*, 158 Tex. 566, 314 S.W.2d 763, 769 (1958). "One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if (a) he discovered the secret by improper means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him." 4 RESTATEMENT OF TORTS § 757 (1939). Some courts of appeals have held that mutual promises between the employer to give confidential information and the employee to keep them secret is sufficient in an employment context to make a confidentiality agreement an otherwise enforceable agreement to which a noncompete may be a part. *See, e.g., Curtis v. Ziff Energy Group, Ltd.*, 12 S.W.3d 114, 118 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

The consideration for Johnson's confidentiality agreement is continuing employment. *Light* may be on solid ground in holding that consideration for a noncompete is illusory if it is dependent on continued employment for an at-will employee.

Otherwise, the employer could terminate the employee prior to providing consideration and still hold the employee to the terms of the noncompete. However, with a confidentiality agreement, the consideration of continued employment is not illusory because neither of the parties' mutual promises is dependent on continued employment. If an employee signs a confidentiality agreement as a condition of his continued employment, it becomes enforceable upon the employee's continuation in his job. If the employee is terminated, voluntarily or involuntarily, before continuing his employment, he is not bound by the contract to the terms of the confidentiality agreement. *Light* requires an owner of property to pay his agent twice—continued employment plus qualifying consideration—to protect his property by contract.

It is not uncommon in certain contexts for the law not to require any additional consideration beyond employment to create rights enforceable in contract. Arbitration is one example. *See In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 163 (Tex.2006) (holding that an employee who receives notice of a modification of employment policy, the implementation of arbitration, and continues working is bound by the policy); *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex.1986) (holding that an at-will employee's continuing to work after receiving modifications to the terms of employment constitutes acceptance of those terms "as a matter of law"). Here, we require the employer to pay consideration that "give[s] rise to the employer's interest in restraining the employee from competing," *Light*, 883 S.W.2d at 647 n. 14, to protect his confidential information when we recognized long ago that a fiduciary duty precluded employees from misuse or misappropriation of such property. *Huffines*, 314 S.W.2d at 775. We should reconsider.

Both the confidentiality agreement and the noncompete are part of Johnson's employment agreement. I would hold that the covenant not to compete is enforceable on the ground that it is ancillary to the otherwise enforceable confidentiality agreement.