# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

July 29, 2011

The Honorable Nizam Peerwani
Presiding Officer
Texas Forensic Science Commission
Post Office Box 2296
Huntsville, Texas 77341-2296

Opinion No. GA-0866

Re: Investigative Authority of the Texas Forensic
Science Commission (RQ-0943-GA)

Dear Mr. Peerwani:

Your predecessor asked three questions about the investigative authority of the Texas Forensic Science Commission (the "FSC").[1]

Before addressing the specific questions, we note that the FSC was created in 2005 with the addition of article 38.01 to the Code of Criminal Procedure. *See* Act of May 30, 2005, 79th Leg., R.S., ch. 1224, § 1, 2005 Tex. Gen. Laws 3952, 3952–53 (the "2005 Act"). Under article 38.01(4), the FSC has three purposes. *See* TEX. CODE CRIM. PROC. ANN. art. 38.01(4) (West Supp. 2010). For the present inquiry, the most relevant of the FSC's purposes is found in article 38.01(4)(a)(3), which authorizes the FSC to:

> investigate, in a timely manner, any allegation of professional negligence or misconduct that would substantially affect the integrity of the results of a forensic analysis conducted by an accredited laboratory, facility, or entity.

*Id.* art. 38.01, § 4(a)(3).

We now address the first question:

> Does the Act's effective date provision restrict the FSC's investigative authority to cases in which the requirements set forth in that provision are met?

---

[1]Letter from Honorable John M. Bradley, Presiding Officer, Texas Forensic Science Commission, to Honorable Greg Abbott, Attorney General of Texas at 1 (Jan. 28, 2011), https://www.oag.state.tx.us/opin/index_rq.shtml ("Request Letter").

Request Letter at 3. As noted above, section 4(a)(3) grants general investigative authority to the FSC. However, the 2005 Act also contains specific provisions restricting that general authority. One such provision is section 22 of the Act, the "effective date provision" to which the request letter refers. *See* 2005 Act, § 22, at 3964–65. Section 22 is not codified in article 38.01, but it is nonetheless governing law. *Baldridge v. Howard*, 708 S.W.2d 62, 63–64 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (discussing legislative intent and validity of uncodified session law). Under section 22, "[t]he change in law made by this Act applies to . . . evidence tested or offered into evidence on or after the effective date of this Act." 2005 Act, § 22(a)(1), at 3964–65. The effective date of the 2005 Act is September 1, 2005. *Id.* § 23, at 3965. Thus, section 22 provides that "[t]he change in law made by this Act applies to . . . evidence tested or offered into evidence" *after* September 1, 2005. 2005 Act, §§ 22–23, at 3964–65. By its plain terms, the Act does not apply to evidence tested or offered into evidence *before* September 1, 2005. The FSC therefore lacks authority to take any action with respect to such evidence.

Some of the briefs submitted to this office contend that the law's effective date limitations will foreclose FSC review of important matters that may merit further investigation.[2] As the Texas Supreme Court has observed, "[T]he truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on. [The] enacted language is what constitutes the law, and when a statute's words are unambiguous and yield a single inescapable interpretation, the judge's inquiry is at an end." *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006). Some briefers have also argued that pre- and post-enactment statements by certain legislators support an outcome that diverges from this opinion's application of the statute's plain language.[3] Again, the Texas Supreme Court has warned against such arguments: "[The court is] mindful that over-reliance on secondary materials should be avoided, particularly where a statute's language is clear. If the text is unambiguous, we must take the Legislature at its word and not rummage around in legislative minutiae." *Id.* at 652 n.4. Finally, the court has noted that "the statement of a single legislator, even the author and sponsor of the legislation, does not determine legislative intent." *AT & T Commc'ns of Tex. v. Sw. Bell Tel. Co.*, 186 S.W.3d 517, 528–29 (Tex. 2006). Thus, as directed by the Texas Supreme Court, our analysis of the first question is limited to the clear language of the statutory text and is not influenced by public policy considerations or legislative history.

While section 22's time limitation prohibits the FSC from taking any action with respect to evidence that was tested or offered into evidence before September 1, 2005, the Act contains no time limitation on the FSC's general authority under section 4(a)(3) to "investigate in a timely manner, any allegation of professional negligence or misconduct." 2005 Act, §§ 22–23, at 3964–65. Thus, although the FSC may investigate allegations arising from incidents that occurred prior to September

---

[2]*See* Brief from Ms. Lisa Graybill, American Civil Liberties Union of Tex. at 10–13 (Mar. 14, 2011) (Graybill Brief); Brief from Mr. Stephen Saloom, Innocence Project of New York at 7–10 (Mar. 7, 2011) (Saloom Brief); Brief from Mr. Gary Udashen, Innocence Project of Texas at 2–14 (Mar. 3, 2011) (Udashen Brief).

[3]*See* Graybill Brief, *supra* note 2, at 7–11; Saloom Brief, *supra* note 2, at 3–6; Udashen Brief, *supra* note 2, at 7 nn.2–3, 10–12.

1, 2005, it is prohibited, in the course of any such investigation, from considering or evaluating specific items of evidence that were tested or offered into evidence prior to that date.

The second question is as follows:

> Does the Act limit the investigative scope of the FSC to allegations of negligence and misconduct involving forensic analyses conducted only by laboratories, facilities or entities that were *accredited* by the Department of Public Safety ("DPS") when the analyses took place?

Request Letter at 3 (emphasis added). Section 4(a)(3) of article 38.01 restricts the FSC's investigative authority to acts "that would substantially affect the integrity of the results of a forensic analysis conducted by an accredited laboratory, facility, or entity." TEX. CODE CRIM. PROC. ANN. art. 38.01, § 4(a)(3) (West Supp. 2010). While article 38.01 itself does not define the term "accredited," other provisions in the Act clarify its meaning. The 2005 Act creates an accreditation process applicable to a "crime laboratory" or other entity that conducts "forensic analyses of physical evidence for use in criminal proceedings." *See* 2005 Act, § 3, at 3954–55; TEX. GOV'T CODE ANN. § 411.0205(b)(1) (West Supp. 2010). Under this provision, the DPS director is instructed to establish the accreditation process. Considered in context, the term "accredited" in section 4(a)(3) refers to the statutory accreditation process established by the DPS director.

Read in isolation, section 4(a)(3) does not provide precise clarity about the question regarding the timing of a laboratory, facility, or entity's accreditation relative to when the analysis took place. The most natural reading of section 4(a)(3) limits the FSC's investigative authority to laboratories, facilities, or entities that were accredited by the DPS at the time the forensic analysis took place. However, section 4(a)(3) could also potentially be read to limit the FSC's investigative authority to laboratories, facilities, or entities that were accredited when the FSC investigation took place.

While our conclusion regarding the second question is based primarily on a natural reading of the text of section 4(a)(3), we are aided in resolving any potential ambiguity by the canon of statutory construction known as *in pari materia,* under which statutes on the same subject matter must be read consistently, especially those statutes enacted as part of the same bill.[4] Guided by the principle of *in pari materia,* we turn to section 38.35(d)(1) of the Code of Criminal Procedure, which, like section 4(a)(3), was added to the Code by the 2005 Act. Section 38.35(d)(1) provides that a forensic analysis of physical evidence is not admissible if, "*at the time of the analysis,* the

---

[4]"It is a settled rule of statutory interpretation that statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered as being *in pari materia . . . .*" *State v. Vasilas,* 253 S.W.3d 268, 271 (Tex. Crim. App. 2008); *In re J.M. R.,* 149 S.W.3d 289, 292 (Tex. App.—Austin 2004, no pet.) (observing that when determining whether *in pari materia* analysis is appropriate, an important factor is whether the two provisions in question are contained in the same legislative act). *See also* Tex. Att'y Gen. Op. No. GA-0119 (2003) at 3–4 (discussing rule of *in pari materia* as means of statutory construction).

crime laboratory conducting the analysis was not accredited by the [DPS] director." TEX. CODE CRIM. PROC. ANN. art. 38.35(d)(1) (West Supp. 2010) (emphasis added). Thus, under section 38.35(d)(1), the relevant inquiry is whether the crime laboratory was accredited when the forensic analysis took place. Likewise, under section 4(a)(3), when determining whether a laboratory, facility, or entity is subject to FSC investigation, the relevant test is whether the laboratory, facility, or entity was accredited when the forensic analysis took place. In sum, the most natural reading of the statutory text is also supported by the principle of *in pari materia*. Accordingly, we conclude that section 4(a)(3) limits the FSC's investigative authority to those laboratories, facilities, or entities accredited by the DPS at the time the forensic analysis took place.

The final question follows:

> Does the Act prohibit the FSC from investigating fields of forensic analysis that have been expressly excluded by DPS pursuant to its rulemaking authority under Section 411.0205(c) of the Texas Government Code? When the FSC receives a complaint involving forensic analysis that is *neither* expressly included *nor* expressly excluded by the Act or DPS rule, does the FSC have authority to investigate such a complaint?

Request Letter at 3. Article 38.01 expressly incorporates the definition of "forensic analysis" from article 38.35(a) of the Code of Criminal Procedure:

> (4) "Forensic analysis" means a medical, chemical, toxicologic, ballistic, or other expert examination or test performed on physical evidence, including DNA evidence, for the purpose of determining the connection of the evidence to a criminal action. The term includes an examination or test requested by a law enforcement agency, prosecutor, criminal suspect or defendant, or court.

TEX. CODE CRIM. PROC. ANN. art. 38.35(a)(4), *id.* art. 38.01, § 2 (West Supp. 2010). This statutory definition is not limited to specifically enumerated types of forensic analysis but encompasses any "medical, chemical, toxicologic, ballistic, or other expert examination or test performed on physical evidence . . . for the purpose of determining the connection of the evidence to a criminal action." Notwithstanding that broad definition, the Act specifically excludes the following items from its generic definition of "forensic analysis:"

> (A) latent print examination;

> (B) a test of a specimen of breath under Chapter 724, Transportation Code;

> (C) digital evidence;

        (D)   an examination or test excluded by rule under Section 411.0205(c), Government Code;

        (E)   a presumptive test performed for the purpose of determining compliance with a term or condition of community supervision or parole and conducted by or under contract with a community supervision and corrections department, the parole division of the Texas Department of Criminal Justice, or the Board of Pardons and Paroles; or

        (F)   an expert examination or test conducted principally for the purpose of scientific research, medical practice, civil or administrative litigation, or other purpose unrelated to determining the connection of physical evidence to a criminal action.

*Id.* § 38.35(a)(4)(A–F). In answer to the first part of this question, the Act, by its plain terms, prohibits the FSC from investigating fields of forensic analysis expressly excluded from the statutory definition of "forensic analysis." *Id.* art. 38.01, § 4(a)(3). As for the second part of this question, forensic analysis that is neither expressly included nor expressly excluded by the Act or DPS rule, but falls under the generic definition of "forensic analysis" found in section 38.35(a)(4), is generally subject to the FSC's investigative authority, assuming all other statutory requirements are satisfied.

## S U M M A R Y

Although the Forensic Science Commission may conduct investigations of incidents that occurred before September 1, 2005, the law that created the Commission prohibits the FSC from considering evidence that was tested or offered into evidence prior to that date. The Forensic Science Commission's investigative authority is limited to those laboratories, facilities, or entities that were accredited by the Department of Public Safety at the time the forensic analyses took place. The FSC may not investigate fields of forensic analysis expressly excluded from the statutory definition of "forensic analysis." Forensic analysis that is neither expressly included nor excluded by the Act or DPS rule, but that falls under the generic definition of "forensic analysis" found in section 38.35(a)(4), is generally subject to FSC investigation, assuming all other statutory requirements are satisfied.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee