# IN THE SUPREME COURT OF TEXAS

═══════════
No. 11-0732
═══════════

IN RE STEPHANIE LEE, RELATOR

═══════════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
═══════════════════════════════════════════════

**Argued February 28, 2012**

JUSTICE LEHRMANN announced the Court's decision and delivered the opinion of the Court with respect to Parts I, II, III, V, and VII, in which JUSTICE JOHNSON, JUSTICE WILLETT, JUSTICE GUZMAN, and JUSTICE BOYD joined, and delivered an opinion with respect to Parts IV and VI, in which JUSTICE JOHNSON, JUSTICE WILLETT, and JUSTICE BOYD joined.

JUSTICE GUZMAN filed a concurring opinion.

JUSTICE GREEN filed a dissenting opinion, in which CHIEF JUSTICE JEFFERSON, JUSTICE HECHT, and JUSTICE DEVINE joined.

"If a mediated settlement agreement meets [certain requirements], a party is *entitled to judgment* on the mediated settlement agreement notwithstanding . . . another rule of law." TEX. FAM. CODE § 153.0071(e) (emphasis added). We are called upon today to determine whether a trial court abuses its discretion in refusing to enter judgment on a statutorily compliant mediated settlement agreement (MSA) based on an inquiry into whether the MSA was in a child's best interest. We hold that this language means what it says: a trial court may not deny a motion to enter judgment on a

properly executed MSA on such grounds. Accordingly, we conditionally grant the writ of mandamus.

## I. Background

Relator Stephanie Lee and Real Party in Interest Benjamin Redus are the parents and joint managing conservators of their minor daughter. Stephanie has the exclusive right to designate the child's primary residence under a 2007 order adjudicating parentage. Benjamin petitioned the court of continuing jurisdiction to modify that order, alleging that the circumstances had materially and substantially changed because Stephanie had relinquished primary care and possession of the child to him for at least six months. *See* TEX. FAM. CODE § 156.101. Benjamin sought the exclusive right to determine the child's primary residence and requested modification of the terms and conditions of Stephanie's access to and possession of the child, alleging that Stephanie's "poor parenting decisions" had placed the child in danger. He also sought an order requiring that Stephanie's periods of access be supervised on the basis that she "has a history or pattern of child neglect directed against" the child. Additionally, Benjamin sought an order enjoining Stephanie from allowing the child within twenty miles of Stephanie's husband, Scott Lee, a registered sex offender, and requiring Stephanie to provide Benjamin with information on her whereabouts during her periods of access so that Benjamin could verify her compliance with the twenty-mile restriction.

Before proceeding to trial, the parties attended mediation at which they were both represented by counsel. The mediation ended successfully with the parties executing a mediated settlement agreement modifying the 2007 order. The MSA gives Benjamin the exclusive right to establish the child's primary residence, and it gives Stephanie periodic access to and possession of the child.

2

Among the terms and conditions of Stephanie's access and possession, the MSA contains the following restriction concerning Scott:

> At all times[,] Scott Lee is enjoined from being within 5 miles of [the child]. During [Stephanie]'s periods of possession with [the child,] Scott Lee shall notify [Benjamin] through Stephanie Lee by e-mail or other mail where he will be staying . . . [a]nd the make and model of the vehicle he will be driving. This shall be done at least 5 days prior to any visits. [Benjamin] shall have the right to have an agent or himself monitor Mr. Lee's location by either calling or driving by the location at reasonable times.

The introductory paragraph of the MSA explains that "[t]he parties wish to avoid potentially protracted and costly litigation, and agree and stipulate that they have carefully considered the needs of the child[] . . . and the best interest of the child." The MSA also contains the following language in boldfaced, capitalized, and underlined letters:

**THE PARTIES ALSO AGREE THAT THIS MEDIATION AGREEMENT IS BINDING ON BOTH OF THEM AND IS NOT SUBJECT TO REVOCATION BY EITHER OF THEM.**

The MSA was signed by both Stephanie and Benjamin, as well as their attorneys.

Benjamin appeared before an associate judge to present and prove up the MSA. During Benjamin's testimony in support of the MSA, the associate judge inquired about the injunction regarding Scott. Benjamin informed the judge that Scott was a registered sex offender, and he testified that Scott "violated conditions of his probation with [Benjamin's] daughter in th[e] house" and that he "sle[pt] naked in bed with [Benjamin's] daughter between [Scott and Stephanie]."

3

Stephanie did not attend the hearing and therefore was not able to respond to these allegations.[1] Based on this testimony, the associate judge refused to enter judgment on the MSA.

Stephanie filed a motion to enter judgment on the MSA, and Benjamin filed a written objection withdrawing his consent to the MSA, arguing that it was not in the best interest of the child. At the hearing on Stephanie's motion, the district judge heard brief testimony on the MSA from Benjamin and Stephanie, including testimony regarding whether the MSA was in the child's best interest. Stephanie testified that she believed the MSA was in the child's best interest, and Benjamin also admitted on cross-examination that, at the time of execution, he thought the MSA was in the child's best interest. Both Stephanie and Benjamin testified that Benjamin was not a victim of family violence.

The judge also heard testimony on Scott's status as a registered sex offender. Stephanie testified that, in 2009, Scott was served with a violation of his deferred adjudication because of his contact with the child.[2] Stephanie admitted that, although Scott was placed on additional probation conditions in 2011, she allowed Scott to have contact with the child and to reside in the same house with her and the child in violation of those conditions. Stephanie specifically denied that she ever allowed Scott to take care of the child without her supervision. Notably, although Benjamin testified

[1] Stephanie was represented by substitute counsel at the hearing, but neither Stephanie nor her attorney who signed the MSA was present and therefore could not respond to any allegations made by Benjamin at the hearing. Benjamin appeared personally and, although his attorney who signed the MSA did not appear with him, he was accompanied by alternate counsel. Finally, the Attorney General was represented by counsel at the hearing, although the Attorney General was not a party to either the MSA or the mediation.

[2] In her brief, Stephanie admits that Scott received a deferred adjudication for a sex offense years earlier in 2001.

that he knew about Scott's status as a registered sex offender, he did not repeat the allegation that Scott had slept naked with the child.

The district court concluded that entry of the MSA was not in the best interest of the child and denied Stephanie's motion to enter judgment. The court advised the parties that they were free to reach a new agreement on their own, but the court declined to send the parties back to mediation and instead set the case for trial.

Stephanie petitioned the court of appeals for a writ of mandamus ordering the trial court to enter judgment on the MSA. Stephanie argued that the trial court lacked discretion to refuse judgment based on the best interest determination. No. 14-11-00714-CV, 2011 WL 4036610, at *1. The court of appeals held "that the trial court [did] not commit[] a clear abuse of discretion in refusing to enter judgment on a mediated settlement agreement that is not in the child's best interest." *Id.* at *2. Stephanie then timely petitioned this Court for a writ of mandamus.

## II. The Need For Mediation in High-Conflict Custody Disputes

Encouragement of mediation as an alternative form of dispute resolution is critically important to the emotional and psychological well-being of children involved in high-conflict custody disputes. Indeed, the Texas Legislature has recognized that it is "the policy of this state to encourage the peaceable resolution of disputes, *with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children*, and the early settlement of pending litigation through voluntary settlement procedures." TEX. CIV. PRAC. & REM. CODE § 154.002 (emphasis added). This policy is well-supported by, *inter alia*, literature discussing the enormous emotional and financial costs of

5

high-conflict custody litigation, including its harmful effect on children.[3] Children involved in these disputes—tellingly, referred to as "custody battles"—can face perpetual emotional turmoil, alienation from one or both parents, and increased risk of developing psychological problems.[4] All the while, most of these families have two adequate parents who merely act out of fear of losing their child. For the children themselves, the conflict associated with the litigation itself is often much greater than the conflict that led to a divorce or custody dispute.[5] The Legislature has thus recognized that, because children suffer needlessly from traditional litigation, the amicable resolution

---

[3] *See, e.g.*, Sarah H. Ramsey, Rep., *Conference Report and Action Plan, High-Conflict Custody Cases: Reforming the System for Children*, 34 FAM. L.Q. 589, 589 (2001) (discussing "recommendations for changes in the legal and mental health systems to reduce the impact of high-conflict custody cases on children").

[4] *See* Ramsey, *supra* note 3, at 589–90 (detailing the damaging impact high-conflict custody litigation can have on the children involved); *see also* Robert F. Cochran, Jr., *Legal Ethics and Collaborative Practice Ethics*, 38 HOFSTRA L. REV. 537, 539 (2009) (noting the "growing recognition that children are collateral damage in many divorces, especially high conflict divorces"); Linda D. Elrod, *Reforming the System to Protect Children in High-Conflict Custody Cases*, 28 WM. MITCHELL L. REV. 495, 501–04 (2001) (criticizing the adversarial system as unnecessarily harmful to children); Clare Huntington, *Repairing Family Law*, 57 DUKE L.J. 1245, 1284–85 (2008) ("Family law disputes carry terrible potential for a high level of emotional harm . . . . High-conflict divorces hold even greater potential of harm for the parties and children." (footnotes omitted)); Jessica J. Sauer, *Mediating Child Custody Disputes for High Conflict Couples: Structuring Mediation to Accommodate the Needs and Desires of Litigious Parents*, 7 PEPP. DISP. RESOL. L.J. 501, 509–14 (2007) (discussing the health benefits of mediation for children in custody cases).

[5] *See* Huntington, *supra* note 4, at 1283 ("Whatever breach the members of the family have suffered, subjecting that breach to the pressures of the adversarial system is likely to heighten the emotions surrounding the breach."); Jana B. Singer, *Dispute Resolution and the Postdivorce Family: Implications of a Paradigm Shift*, 47 FAM. CT. REV. 363, 363 (2009) (commenting on the move away from the adversary paradigm in family law because "social science suggests that children's adjustment to divorce and separation depends significantly on their parents' behavior during and after the separation process: the higher the levels of parental conflict to which children are exposed, the more negative the effects of family dissolution"); Solangel Maldonado, *Taking Account of Children's Emotions: Anger and Forgiveness in "Renegotiated Families,"* 16 VA. J. SOC. POL'Y & L. 443, 444–45 (2009) ("Anger causes too many divorcing parents to behave badly—to disparage the other parent or interfere with access to the child, to withhold child support, to contest custody out of spite, and, in rare cases, to make false accusations of abuse. Legal scholars have recognized that interparental anger is harmful to both parents and children and have advocated for reforms, such as no fault divorce, mediation, and parenting education, in an effort to alleviate parties' anger during and after the divorce." (footnotes omitted)); *see also* CARLA B. GARRITY & MITCHELL A. BARIS, CAUGHT IN THE MIDDLE: PROTECTING THE CHILDREN OF HIGH-CONFLICT DIVORCE 83 (1994) (noting that "for families and children caught in the stress of parental alienation, litigation is likely to exacerbate the polarization").

of child-related disputes should be promoted forcefully. With the Legislature's stated policy in mind, we turn to the statute in question.

### III. Statutory Interpretation

The sole issue before us today is whether a trial court presented with a request for entry of judgment on a validly executed MSA may deny a motion to enter judgment based on a best interest inquiry.[6] While Texas trial courts have numerous tools at their disposal to safeguard children's welfare, the Legislature has clearly directed that, subject to a very narrow exception involving family violence, denial of a motion to enter judgment on an MSA based on a best interest determination, where that MSA meets the statutory requirements of section 153.0071(d) of the Texas Family Code,

---

[6] While this is an issue of first impression in this Court, several courts of appeals have analyzed the statute governing entry of judgment on MSAs. *See In re S.A.D.S.*, No. 2-09-302-CV, 2010 WL 3193520, at *4 (Tex. App.—Fort Worth Aug. 12, 2010, no pet.) ("The express provision on mediated settlement agreements, however, contains no express exceptions giving the trial court discretion not to enforce the mediated settlement agreement."); *Barina v. Barina*, No. 03-08-00341-CV, 2008 WL 4951224, at *4 (Tex. App.—Austin Nov. 21, 2008, no pet.) (mem. op.) ("Unless there is an allegation of family violence, a section 153.0071 agreement may be ruled on without a determination by the trial court that the terms of the agreement are in the best interest of the child."); *Beyers v. Roberts*, 199 S.W.3d 354, 360 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (noting that a trial court may hold a best interest hearing in an MSA case if presented with proper facts); *Zimmerman v. Zimmerman*, No. 04-04-00347-CV, 2005 WL 1812613, at *1 (Tex. App.—San Antonio Aug. 3, 2005, pet. denied) (mem. op.) (holding that the trial court was required to enter judgment on the agreement); *Garcia-Udall v. Udall*, 141 S.W.3d 323, 331–32 (Tex. App.—Dallas 2004, no pet.) (holding that the trial court had no authority to enter a judgment that varied from the terms of the MSA, but that the court did have authority not to enforce illegal provisions in the MSA); *In re Circone*, 122 S.W.3d 403, 406 (Tex. App.—Texarkana 2003, no pet.) ("The Family Code contains no language allowing the trial court to review the mediation and explicitly requires the court to enter judgment based on the mediation agreement."); *In re J.A.W.-N.*, 94 S.W.3d 119, 121 (Tex. App.—Corpus Christi 2002, no pet.) (concluding that if the requirements for a binding MSA are met, the parties are entitled to have the MSA enforced); *Alvarez v. Reiser*, 958 S.W.2d 232, 233 (Tex. App.—Eastland 1997, pet. denied) (holding that even if one party withdraws its consent to the MSA, the trial court is required to enter judgment on the agreement).

is not one of those tools. Accordingly, the trial court in this case abused its discretion by denying entry of judgment on the MSA and setting the matter for trial.[7]

## A. Standard of Review

"We review questions of statutory construction de novo." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). Our fundamental objective in interpreting a statute is "to determine and give effect to the Legislature's intent." *Am. Zurich Ins. Co. v. Samudio*, 370 S.W.3d 363, 368 (Tex. 2012); *accord Molinet*, 356 S.W.3d at 411. In turn, "[t]he plain language of a statute is the surest guide to the Legislature's intent." *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012). "We take the Legislature at its word, and the truest measure of what it intended is what it enacted." *In re Office of Attorney Gen.*, ___ S.W.3d ___, ___ (Tex. 2013). "[U]nambiguous text equals determinative text," and "'[a]t this point, the judge's inquiry is at an end.'" *Id.* (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 (Tex. 2006)).

It is inappropriate to resort to rules of construction or extratextual information to construe a statute when its language is clear and unambiguous. *Id.* "This text-based approach requires us to study the language of the specific section at issue, as well as the statute as a whole." *Id.* When construing the statute as a whole, we are mindful that "[i]f a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to

---

[7] Mandamus relief is available to remedy a trial court's erroneous refusal to enter judgment on an MSA. *See Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 659 (Tex. 1996) (orig. proceeding) (holding that the relator lacked an adequate remedy by appeal with respect to the court of appeals' refusal to abate the appeal pending resolution of a separate action to enforce a settlement agreement, noting that "[i]f the agreement is ultimately upheld, [relator] will have lost much of the settlement's benefit if he has been required to expend time and resources in prosecuting the appeal"). In a child-related dispute, the inadequacy of the appellate remedy in the context of refusal to enforce a settlement agreement is even more pronounced because the significant benefits to the family in peaceably resolving the dispute through mediation are lost.

both." TEX. GOV'T CODE § 311.026(a). However, in the event that any such conflict is irreconcilable, the more specific provision will generally prevail. *Id.* § 311.026(b); *see also In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 470–71 (Tex. 2011). Further, in the event of an irreconcilable conflict between two statutes, generally "the statute latest in date of enactment prevails." TEX. GOV'T CODE § 311.025(a).

## B. Section 153.0071

Consistent with the legislative policy discussed above regarding the encouragement of the peaceable resolution of disputes involving the parent-child relationship, the Legislature enacted section 153.0071 of the Family Code, which provides in pertinent part as follows:

(a) On written agreement of the parties, the court may refer a suit affecting the parent-child relationship to arbitration. The agreement must state whether the arbitration is binding or non-binding.

(b) If the parties agree to binding arbitration, the court shall render an order reflecting the arbitrator's award unless the court determines at a non-jury hearing that the award is not in the best interest of the child. The burden of proof at a hearing under this subsection is on the party seeking to avoid rendition of an order based on the arbitrator's award.

(c) On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent-child relationship to mediation.

(d) A mediated settlement agreement is binding on the parties if the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

9

(e)  If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

(e-1)  Notwithstanding Subsections (d) and (e), a court may decline to enter a judgment on a mediated settlement agreement if the court finds that:

> (1)  a party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decisions; and

> (2)  the agreement is not in the child's best interest.

TEX. FAM. CODE § 153.0071(a)–(e-1).  Subsection (d) provides that an MSA is binding on the parties if it is signed by each party and by the parties' attorneys who are present at the mediation and states prominently and in emphasized type that it is not subject to revocation.  *Id.* § 153.0071(d). Subsection (e) goes even further, providing that a party to an MSA is "entitled to judgment" on the MSA if it meets subsection (d)'s requirements.  *Id.* § 153.0071(e).  Finally, subsection (e-1), added in 2005, provides a narrow exception to subsection (e)'s mandate, allowing a court to decline to enter judgment on even a statutorily compliant MSA if a party to the agreement was a victim of family violence, the violence impaired the party's ability to make decisions, *and* the agreement is not in the best interest of the child.  Act of June 18, 2005, 79th Leg., R.S., ch. 916, § 7, 2005 Tex. Gen. Laws 3148, 3150.

### C. The Parties' Arguments

Stephanie argues that the trial court abused its discretion by refusing to enter judgment on the MSA and setting the case for trial.  She contends that, under section 153.0071, she was "entitled to judgment on the [MSA]" because it complied with the statutory requirements.  *See* TEX. FAM.

10

CODE § 153.0071(d)–(e). She further argues that a court may refuse to enter judgment on a properly executed MSA only when the family violence exception is met and the court finds that the MSA is not in the child's best interest. *See id.* § 153.0071(e-1). Because there was no family violence at issue in this case, she argues, this narrow exception does not apply.

In response, Benjamin first argues that the MSA does not meet the statutory requirements for a binding agreement because it was not signed by the Office of the Attorney General. Additionally, he argues that entry of judgment on an MSA that is not in the best interest of the child violates public policy and is unenforceable. His argument is based on the Family Code's mandate that "[t]he best interest of the child shall always be the primary consideration of the court in determining issues of conservatorship and possession." *Id.* § 153.002. He argues that trial courts therefore have the discretion to void all or part of an MSA that is not in the child's best interest.

In response to our request that the Office of the Solicitor General provide the position of the State of Texas, the State submitted a brief in favor of the trial court's and court of appeals' disposition, arguing that the "overarching purpose of Texas Family Code chapter 153 is to ensure trial courts' ability to act in the best interests of minor children—even when their parents do not." The State urges that we must not look at section 153.0071 in isolation; rather, we must construe it within the broader context of the Legislature's concern for the best interest of children as expressed in the Family Code. *See id.* §§ 153.001, .002. The State argues that, in light of this overarching state policy, the trial court did not abuse its discretion by refusing to enter judgment on the MSA.

Finally, the State Bar of Texas Family Law Council (the Council) submitted an amicus curiae brief in support of Stephanie's petition. The Council argues that a strict interpretation of section

11

153.0071 fulfills the state policy favoring amicable resolution of disputes and suggests that holding as the courts below did could lead to a loss in confidence in mediation and an increase in litigation over the best interest of the child. The Council argues that rules of statutory construction make clear that the Legislature intended to remove the best interest determination in the context of an MSA, instead deferring to parents to determine the best interest of the child, except where family violence is involved. *See id.* § 153.0071(e-1). The Council urges that to hold otherwise would "gut the legislative intent favoring alternative dispute resolution of family law matters by mediation," increasing both the cost of the proceedings and the stress on families forced to resolve "their disputes in the adversarial venue of the courts, rather than the cooperative environment of mediation." The Council contends that "[t]his result is certainly not in a child's best interest."

### D. Analysis of Section 153.0071

Section 153.0071(e) unambiguously states that a party is "entitled to judgment" on an MSA that meets the statutory requirements "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Id.* § 153.0071(e). Subsection (e-1) provides a narrow exception, allowing a trial court to decline to enter judgment on an MSA when three requirements are all met: (1) a party to the agreement was a victim of family violence, *and* (2) the court finds the family violence impaired the party's ability to make decisions, *and* (3) the agreement is not in the child's best interest. *Id.* § 153.0071(e-1). By its plain language, section 153.0071 authorizes a court to refuse to enter judgment on a statutorily compliant MSA on best interest grounds *only* when the court also finds the family violence elements are met. Stated another way, "[t]he statute does not authorize the trial court to substitute its judgment for the mediated settlement agreement entered by the parties

12

unless the requirements of subsection 153.0071(e-1) are met." *Barina v. Barina*, No. 03-08-00341-CV, 2008 WL 4951224, at *4 (Tex. App.—Austin Nov. 21, 2008, no pet.) (mem. op.). Subsection (e-1), enacted after subsection (e), makes it absolutely clear that the Legislature limited the consideration of best interest in the context of entry of judgment on an MSA to cases involving family violence. Allowing a court to decline to enter judgment on a valid MSA on best interest grounds without family violence findings would impermissibly render the family violence language in subsection (e-1) superfluous. *See In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008) (reaffirming rule that courts must give effect to all words in a statute without treating any statutory language as mere surplusage).

Section 153.0071(b), governing arbitration of child-related disputes, is also instructive. In stark contrast with subsection (e), subsection (b) explicitly gives trial courts authority to decline an arbitrator's award when it is not in the best interest of the child. *Compare* TEX. FAM. CODE § 153.0071(b), *with id.* § 153.0071(e). This distinction between arbitration and mediation makes sense because the two processes are very different. Mediation encourages parents to work together to settle their child-related disputes, and shields the child from many of the adverse effects of traditional litigation. On the other hand, arbitration simply moves the fight from the courtroom to the arbitration room. If the Legislature had intended to authorize courts to inquire into the child's best interest when determining whether to render judgment on validly executed MSAs, as it did in section 153.0071(b) with respect to judgments on arbitration awards, it certainly knew how to do so.

Benjamin argues that, despite section 153.0071's plain language, "[n]othing precludes the court from considering the best interests of the child, including a request for entry on a mediated

13

settlement agreement." Benjamin and the State are correct that the Family Code provides that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id.* § 153.002. However, section 153.0071(e) reflects the Legislature's determination that it is appropriate for parents to determine what is best for their children within the context of the parents' collaborative effort to reach and properly execute an MSA. This makes sense not only because parents are in a position to know what is best for their children, but also because successful mediation of child-custody disputes, conducted within statutory parameters, furthers a child's best interest by putting a halt to potentially lengthy and destructive custody litigation. However, as discussed further below, a trial judge with cause to believe that a child's welfare is at risk due to suspected abuse or neglect is required to report such abuse or neglect to an appropriate agency, as is any other individual with this type of knowledge. *Id.* §§ 261.101–.103. In this sense, parents who enter into MSAs are no different from the myriad of parents in intact families who are presumed to act in their children's best interests every day. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) (observing that "the interest of parents in the care, custody, and control of their children[ ]is perhaps the oldest of the fundamental liberty interests recognized by this Court").

To the extent the two statutes do conflict, applicable rules of construction require us to hold that section 153.0071 prevails. First, section 153.0071(e) mandates entry of judgment "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." TEX. FAM. CODE § 153.0071(e). The use of the word "notwithstanding" indicates that the Legislature intended section 153.0071 to be controlling. *Molinet*, 356 S.W.3d at 413–14 (holding that a "notwithstanding any

14

other law" provision evidenced clear legislative intent to resolve any interpretation conflicts in favor of the statute containing the provision); *see also Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex. 2010) (holding that a statute "manifest[ing] clear legislative intent that conflicting statutes are ineffective" controlled over such conflicting statutes).[8]

Further, the specific statutory language of section 153.0071(e) trumps section 153.002's more general mandate. TEX. GOV'T CODE § 311.026(b); *see also Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 297 (Tex. 2011) (reiterating the rule that specific statutory provisions prevail over general mandates). Finally, the MSA provision was added long after the general "best interest" provision and therefore prevails as "the statute latest in date of enactment." TEX. GOV'T CODE § 311.025(a); *Jackson*, 351 S.W.3d at 297. Thus, it is clear that the MSA statute was enacted with the intent that, when parents have agreed that a particular arrangement is in their child's best interest and have reduced that agreement to a writing complying with section 153.0071, courts must defer to them and their agreement.

For these reasons, we hold that section 153.0071(e) encourages parents to peaceably resolve their child-related disputes through mediation by foreclosing a broad best interest inquiry with respect to entry of judgment on properly executed MSAs,[9] ensuring that the time and money spent

---

[8] The dissent would hold that the reference to Rule 11 narrows the mandate such that subsection (e) controls only over other "provisions under which similar types of agreements to resolve family disputes may be repudiated or withdrawn prior to entry of judgment." ___ S.W.3d at ___. This is undercut by subsection (e-1), which allows the trial court to decline to enter judgment on an MSA if the family violence exception is met and the MSA is not in the child's best interest, "*[n]otwithstanding Subsections (d) and (e)*." TEX. FAM. CODE § 153.0071(e-1) (emphasis added). There would have been no need to include such "notwithstanding" language in subsection (e-1) if subsection (e) were intended to control only in the narrow set of circumstances specified by the dissent.

[9] Again, the court may decline to enter judgment when the family violence exception is met.

on mediation will not have been wasted and that the benefits of successful mediation will be realized. Allowing courts to conduct such an inquiry in contravention of the unambiguous statutory mandate in section 153.0071 has severe consequences that will inevitably harm children. The decisions below ignore clearly expressed legislative intent, undermining the Legislature's goal of protecting children by eroding parents' incentive to work collaboratively for their children's welfare. This frustrates the policies underlying alternative dispute resolution in the custody context, which are firmly grounded in the protection of children.[10]

### IV. A Trial Court's Duty to Take Protective Action

The dissent is concerned that the statute, as written, would require trial courts to ignore evidence that the parents' agreed arrangement would endanger a child by subjecting the child to neglect or abuse. This case, however, does not present that issue. The trial court in this case refused to enter judgment on the parents' MSA because the court believed the agreed arrangement was not in the child's best interest, not because the court believed the arrangement would subject the child to neglect or abuse or would otherwise endanger the child. Thus, we need not, and should not, decide in this case the contours of a trial court's duties and discretion when faced with an MSA that would endanger a child, as that issue is not before us and any such opinion would be advisory.

---

[10] Several lower courts have addressed the issue of whether section 153.0071 mandates entry of judgment on a statutorily compliant MSA under any and all circumstances, even where, for example, the agreement "'was illegal or . . . was procured by fraud, duress, coercion, or other dishonest means.'" *See, e.g.*, *In re Calderon*, 96 S.W.3d 711, 718 (Tex. App.—Tyler 2003, orig. proceeding) (quoting *Boyd v. Boyd*, 67 S.W.3d 398, 403 (Tex. App.—Fort Worth 2002, no pet.) (analyzing comparable Family Code provision governing MSAs in suits involving marital property)). That issue is not presented or decided here.

Nevertheless, because endangerment appears to lie at the heart of the dissent's concern, we are compelled to note that section 153.0071 does not require a trial court to blindly leave a child whose welfare is at risk in harm's way. To the contrary, courts can never stand idly by while children are placed in situations that threaten their health and safety. However, this does not mean courts can refuse to abide by section 153.0071(e) by denying a motion to enter judgment on a properly executed MSA on best interest grounds.[11] Trial courts have other statutorily endorsed methods by which to protect children from harm without eviscerating section 153.0071(e)'s mandatory language or reading language into the statute under the guise of "interpreting" it.

The Family Code provides trial courts with numerous mechanisms for protecting a child's physical and emotional welfare, both during and after the pendency of a suit affecting the parent-child relationship (SAPCR). For example, a trial court may find it necessary to involve a government agency like the Department of Family and Protective Services (DFPS), the agency charged with the duty to investigate and protect endangered children, before rendering final judgment. Specifically, a court "having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect . . . *shall immediately*" notify DFPS or another appropriate agency. TEX. FAM. CODE § 261.101 (emphasis added); *see also id.* § 261.103. Under these and related statutes, when a person has cause to believe that a child is being or may be harmed by abuse or neglect, a DFPS investigation will be triggered, regardless of whether a SAPCR is pending. *Id.* § 261.101; *id.* § 261.301(a) ("The investigation shall be conducted without regard

---

[11] As discussed further below, a best interest inquiry is much broader than an evaluation of whether the child's physical or emotional welfare is in jeopardy.

17

to any pending suit affecting the parent-child relationship."); *see also id.* § 153.0071(g) (stating that the applicability of the provisions for confidentiality of alternative dispute resolution procedures "does not affect the duty of a person to report abuse or neglect under Section 261.101").[12] In these and similar types of situations, a trial court may enter temporary orders, temporary restraining orders, and temporary injunctions to protect a child's safety and welfare, all upon proper motion, before rendering the final order.[13] The trial court may also appoint a representative for the child, such as an amicus attorney or an attorney ad litem. *See id.* § 107.021. Even after issuing a final order, a trial court may act to protect the safety and welfare of a child by issuing protective orders, by issuing temporary orders during an appeal, by ruling on motions to modify, or through habeas corpus proceedings, again upon proper motion.[14]

---

[12] As noted above, in this manner, section 153.0071 effectively places parents involved in a SAPCR who enter into valid MSAs in the same position as parents in intact families—they are presumed to act in their child's best interest in reaching an agreement, subject to a DFPS investigation if a report of suspected abuse or neglect is made.

[13] *See, e.g.*, TEX. FAM. CODE § 105.001(a) ("In a suit, the court may make a temporary order, including the modification of a prior temporary order, for the safety and welfare of the child . . . ."); *id.* § 105.001(b) ("[T]emporary restraining orders and temporary injunctions . . . shall be granted without the necessity of an affidavit or verified pleading . . . ."); *id.* § 105.001(c) (providing that a temporary order may not be rendered taking the child into the possession of the court or of a designated person, or excluding a parent from possession of or access to the child, except on a verified pleading or affidavit); *see also id.* § 156.006(b) (providing that while a modification suit is pending, the court may not render a temporary order that alters which person has the exclusive right to designate the child's primary residence under a final order unless the temporary order is necessary to protect "the child's physical health or emotional development" and is in the best interest of the child).

[14] *See, e.g.*, TEX. FAM. CODE § 81.001 (requiring a court to render a protective order if it finds that family violence has occurred and is likely to occur in the future); *id.* § 82.002(a) (allowing an adult family member to seek a protective order "to protect the applicant or any other member of the applicant's family"); *id.* § 85.001 (providing for issuance of protective orders when court finds that family violence has occurred and is likely to occur in the future); *id.* § 109.001(a) (allowing trial courts to issue temporary orders "to preserve and protect the safety and welfare of the child during the pendency of the appeal"); *id.* § 156.101(a)(1) (allowing modification of an order if it would be in the child's best interest and the circumstances of the child have materially and substantially changed since the date of the signing of the MSA); *id.* § 157.374 (providing that in habeas corpus proceedings, "the court may render an appropriate temporary order if there is a serious immediate question concerning the welfare of the child").

While instigating any of the protective measures described above or elsewhere in the Family Code does not allow a trial court to conduct a broad best interest inquiry in ruling on a motion to enter judgment on an MSA under section 153.0071, it may warrant the trial court's exercise of discretion to continue the MSA hearing for a reasonable time. This allows the trial court, upon proper motion, to render any temporary orders that might be necessary and to determine whether further protective action should be taken. In the event the trial court involves DFPS, a continuance will provide the court with the benefit of the resulting investigation.

Finally, we note that the Legislature's choice to defer to the parties' best interest determination in the specific context of mediation recognizes that there are safeguards inherent in that particular form of dispute resolution compared to various other methods of amicably settling disputes.[15] Under Texas law, "[m]ediation is a forum in which an impartial person, the mediator, facilitates communication between parties to promote reconciliation, settlement, or understanding among them." TEX. CIV. PRAC. & REM. CODE § 154.023(a). To qualify for appointment by the court as an impartial third party when a case is referred to an alternative dispute resolution procedure like mediation, a person must meet certain requirements for training in alternative dispute resolution techniques. *Id.* § 154.052(a). To qualify for appointment "in a dispute relating to the parent-child relationship," the person must complete additional training "in the fields of family dynamics, child development, and family law." *Id.* § 154.052(b). Significantly, all participants in the proceeding,

---

[15] The dissent cites the inapplicable Collaborative Law Act, which allows a tribunal to "issue an emergency order [during the process] to protect the health, safety, welfare, or interest of a party or a family." TEX. FAM. CODE § 15.104. We note that engagement in the collaborative law process under this Act "operates as a stay of the proceeding," *id.* § 15.103(a), and that section 15.104 provides limited authority for the court to act notwithstanding the stay, *id.* § 15.104.

"including the impartial third party," are subject to the mandatory DFPS reporting requirements discussed above. *Id.* § 154.053(d). Thus, the process itself is geared toward protecting children.[16]

In sum, we hold today that a trial court may not deny a motion to enter judgment on a properly executed MSA under section 153.0071 based on a broad best interest inquiry. But we certainly do not hold that a child's welfare may be ignored. Rather, we recognize that section 261.101's mandatory duty to report abuse or neglect, the numerous other statutes authorizing protective action by the trial court, and the safeguards inherent in the mediation process fulfill the need to ensure that children are protected. And they do so without subjecting MSAs to an impermissible level of scrutiny that threatens to undermine the benefits of mediation. The trial court's authority to continue an MSA hearing and to take protective action under the various statutes discussed above is triggered not by a determination that an MSA is not in a child's best interest, but by evidence that a child's welfare is in jeopardy. Thus, the mediation process and its benefits are preserved, and, most importantly, children are protected.

## V. The MSA in This Case

The MSA in this case contains a broad range of provisions governing conservatorship of the child, responsibility for health insurance and medical expenses for the child, child support, possession of and access to the child, and allocation of other parental rights and duties. Included among these is the protective provision enjoining Scott from being within five miles of the child at all times, requiring Stephanie to provide Benjamin with information on Scott's whereabouts during

---

[16] The mediator in the underlying case was Judge Leta Parks. Judge Parks was an associate judge in Harris County for eighteen years and is board-certified in family law. She is a former President of Gulf Coast Family Law Specialists and a former President of the Association of Family and Conciliation Courts, Texas Chapter.

her visits with the child, and allowing Benjamin to monitor compliance with the provision.[17] Compliance with the MSA, then, means the child will have no contact with Scott.

As is relevant to section 153.0071, the MSA is signed by the parties and their lawyers,[18] and it displays in boldfaced, capitalized, and underlined letters that it is irrevocable; thus, it meets the statutory requirements described in that statute to make the agreement binding on Stephanie and Benjamin. *See* TEX. FAM. CODE § 153.0071(d). Additionally, the parties admit that Benjamin was not a victim of family violence, and thus the exception in subsection (e-1) does not apply. The trial court nevertheless denied the motion to enter judgment on the MSA and set the matter for trial based on the court's conclusion that the MSA was not in the child's best interest.[19] Because section 153.0071 did not permit the court to do so, the court's actions were an abuse of discretion.

---

[17] The dissent expresses concern that the injunction provision is directed more at Scott, a nonparty, than at Stephanie. *See* ___ S.W.3d at ___. We agree that the provision could have been more artfully worded, but the intent is clear: Stephanie may not allow the child to come within five miles of Scott. Further, in entering judgment on an MSA, trial courts may include "[t]erms necessary to effectuate and implement the parties' agreement" so long as they do not substantively alter it. *Haynes v. Haynes*, 180 S.W.3d 927, 930 (Tex. App.—Dallas 2006, no pet.). Thus, to the extent there is no dispute about the parties' intent, the trial court has discretion to provide clarification of this or any other provision. In the unlikely event the parties disagree on the intent of this provision, that dispute may be resolved in accordance with the terms of the MSA. *Milner v. Milner*, 361 S.W.3d 615, 622 (Tex. 2012).

[18] Benjamin's argument that the MSA does not meet the statutory requirements because it is not signed by the Office of the Attorney General of Texas (the Office) misunderstands the signature requirement. He argues that the statute requires the signature of the Office because the Office is "a party to this litigation." However, the statute only requires the signature of "each party *to the agreement*." TEX. FAM. CODE § 153.0071(d)(2) (emphasis added). Because the Office is not a party to the agreement, its signature is not required for the MSA to be binding.

[19] The dissent characterizes the trial court's rejection of the MSA as being based on the trial court's "clear[] determin[ation], based on Stephanie's own admissions, that Stephanie has little regard for court orders to protect children from her sex-offender husband, and that she has repeatedly made decisions against her daughter's best interest, which put her daughter at substantial risk." ___ S.W.3d at ___. But the trial court made no such findings. As noted above, the trial court stated only that the MSA "is not in the best interest of the child[]."

## VI. Additional Response to the Dissent

The dissent claims that the Court's holding compels trial courts to disregard the fundamental public policies of protecting children from harm and acting in their best interests. ___ S.W.3d at ___. Nothing could be further from the truth. Rather, we are respecting the Legislature's well-supported policy determination, reflected in the plain language of the MSA statute, that courts should defer to the parties' determinations regarding the best interest of their children when those decisions are made in the context of a statutorily compliant MSA. As discussed above, the harmful effects of litigation in family disputes are well-documented, leading the Legislature to vigorously promote the avoidance of such litigation. This is particularly so when the parties reach agreement pursuant to the mediation process, which is itself designed to ensure that children are protected. The dissent engages in a tortured reading of the MSA statute, flouts well-settled principles of statutory interpretation, and ignores the ramifications of discouraging mediation. And it does so unnecessarily, as our children's welfare can, and indeed must, be protected at the same time that the mediation process and its benefits are preserved.

We agree with the dissent that "[s]urely the Legislature did not commit a useless act in enacting each of more than one hundred statutory provisions to assist courts in determining *how* and *when* to consider a child's best interest." ___ S.W.3d at ___.[20] But the Legislature's explicit direction to courts to make best interest determinations in so many other provisions reinforces our

---

[20] We recognize the serious policy reasons underlying the Family Code's numerous references to a child's best interest and agree that a child's best interest should always be the paramount concern when adjudicating custody and access issues. We simply disagree about whether the statute requires courts to defer to parents' decisions about such matters within the context of properly executed MSAs.

22

interpretation of section 153.0071, rather than the dissent's, and highlights the particular policy considerations, discussed at length above, underlying enforcement of statutorily compliant MSAs. The dissent erroneously concludes that those provisions support grafting similar language onto section 153.0071, even though the Legislature chose not to include it. For example, the dissent reads subsection (e-1), the family violence exception, "to allow a trial court to consider the terms of a modification when the presumption that MSA parties act in the best interest of the child has been negated." *Id.* at ___. But the exception is not nearly as broad as the dissent suggests. Instead, the Legislature carefully identified the specific circumstance in which a trial court may override the parties' best interest determinations and decline to enter judgment on an MSA: when a party to the MSA is a victim of family violence, and the family violence impaired the party's ability to make decisions.[21] TEX. FAM. CODE § 153.0071(e-1). The dissent's insistence that "nothing in the statute expressly limits a trial court's authority to decline to enter judgment on a properly executed, binding MSA to the family violence context addressed in section 153.0071(e-1)" raises the question: why include the exception at all? *See* ___ S.W.3d at ___.

The dissent dismisses our concern that allowing statutorily compliant MSAs to be set aside on best interest grounds will interfere with the state policy favoring peaceable resolution of family disputes and will discourage parties from engaging in mediation. *Id.* at ___. We disagree, as

---

[21] The dissent aptly notes that "[h]ad the Legislature used 'or' instead of 'and' between the two parts of that family violence provision, a trial court would be able to reject an MSA simply because a parent was induced by family violence to enter into an MSA." ___ S.W.3d at ___. By the same token, had the Legislature used "or" instead of "and" between the two parts of the provision, a trial court would be able to reject an MSA solely because the court concluded it was not in a child's best interest. But the Legislature did use the word "and," and the trial court cannot reject an MSA without making affirmative findings as to both parts.

23

(apparently) did the Legislature in failing to include a best interest determination as a prerequisite for or barrier to entry of judgment on an MSA. Why would parties spend considerable time, effort, and money to mediate their dispute in accordance with the statutory requirements when the trial court could very well decide to hold a full trial on the merits anyway? The dissent's claim that this will happen only in rare cases simply is not supportable.

To that end, a trial court's determination that an MSA is not in a child's best interest is not dependent upon, or equivalent to, a finding that the child has been harmed by abuse or neglect or is in danger of such harm. Rather, "best interest" is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (identifying nine factors that may be considered in determining best interest).[22] Under the dissent's interpretation, the trial court would thus have significant leeway, in contravention of the statute's intent, to decide when entry of judgment on a statutorily compliant MSA is or is not appropriate. The possibility that this would lead to an increase in child-related litigation is very real, as parents would be encouraged to contest on best interest grounds the very agreements that they freely entered into through mediation.[23] Even more concerning, parents would

---

[22] Those factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 372.

[23] The dissent insists that it is not reading section 153.0071 to allow a trial court to "refuse to enter judgment on an MSA based on any one of the [*Holley*] factors" and that the issue presented here is "whether a trial court has discretion to reject an MSA that the trial court determines, based on evidence, places a child's safety and welfare in danger and, consequently, cannot possibly be in the child's best interest." ___ S.W.3d at ___. But again, the trial court made no endangerment findings, stating only that the MSA "is not in the best interest of the child[]." More importantly,

24

be discouraged from using the mediation process to begin with, out of concern that their agreements could be ignored and their efforts wasted.

Ultimately, the dissent's suggestion that enforcing section 153.0071 as written leads to an absurd result falls flat. If it were indeed the case that our interpretation would leave trial courts with no ability to protect a child from an MSA that put a child's welfare at risk, we would agree with that suggestion. But as discussed at length above, that simply is not the case, as trial courts have numerous tools at their disposal to protect children that operate in conjunction with, rather than in opposition to, the mandate in section 153.0071.[24]

## VII. Conclusion

Because the MSA in this case meets the Family Code's requirements for a binding agreement, and because neither party was a victim of family violence, we hold that the trial court abused its discretion by denying the motion to enter judgment on the MSA. Accordingly, we conditionally grant mandamus relief. We order the trial court to withdraw its orders denying entry of judgment on the MSA and setting the matter for trial. We are confident that the court will comply, and the writ will issue only if it does not.

---

there is simply no principled basis for the line the dissent draws between those MSAs on which a trial court must enter judgment and those they may disregard. The dissent thus ignores the clear mandate in section 153.0071 and trivializes the numerous other means by which trial courts can and must protect children. In the end, the dissent envisions a trial on whether the disputed MSA provision is in the child's best interest under *Holley*, *id.* at ___, which is exactly what the Legislature intended to foreclose under section 153.0071.

[24] The dissent's assertion that "we cannot have it both ways" misses the point—that protecting children involves shielding them from high-conflict custody disputes as well as from abuse and neglect. Continuing the case until an investigation is complete—so that the trial court has sufficient information upon which to make a proper determination about whether protective orders should be entered contemporaneously with the MSA—makes complete sense and furthers this critical policy.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** September 27, 2013